OPINION OF THE COURT
Abraham Gerges, J.
These cases present the issue of whether the ameliorative portions of the recently enacted changes to the Rockefeller drug laws (Drug Reform Act [DRA] are to be retroactively applied to the defendants who have not been sentenced prior to the effective date of the new statute. The People, in a memorandum of law, request that the court renege on the sentence promises made to the respective defendants. The prosecution alleges that the recent sentence reductions made by DRA to the so-called Rockefeller drug laws do not apply retroactively to these defendants and thus the sentences promised by the court with the District Attorney’s consent are illegal. The government urges the court to permit the defendants to withdraw their guilty pleas, or, in the alternative, if the defendants do not wish to withdraw their guilty pleas to sentence the defendants in accordance with the law applicable at the time of the commission of the crimes.
In deciding this motion, the court has considered the prosecution’s memorandum of law, oral argument by all parties and the court file.
Background
As a result of a long-term investigation into the narcotics trade in a city-run housing development in Coney Island, Brooklyn, New York, numerous defendants were indicted for various narcotics-related crimes. The crimes were committed between June 21, 2001 and January 22, 2003.
By bill signed by the Governor on December 14, 2004, effective January 13, 2005, the Legislature altered the punishment for most narcotics crimes.[1] In most cases, the punishment was reduced. In some instances, the punishment was enhanced.
As part of the legislation, the bill provided that the sections applicable to punishment will apply to all crimes committed after the effective date.[2]
On January 5, 2005, each of the above-named defendants moved to withdraw their not guilty pleas and to plead guilty to *375 particular narcotics crimes. With the consent of the People, the court promised each of the defendants a sentence authorized under the new statute but unauthorized under the law as it existed at the time of the commission of the criminal act. After a full and complete allocution, the court accepted the defendants’ pleas. Sentencing was scheduled for each defendant for January 27, 2005.
By memorandum of law dated January 26, 2005, the People made the instant application.
Legal History of Retroactivity of Ameliorative Criminal Statutes
On January 16, 1894, the Court of Appeals decided People v Hayes.[3] In 1891 and as a result of a civil action, the defendant Hayes committed perjury. The defendant was then indicted for the perjury. In 1892, the Legislature reduced the term of imprisonment for perjury by eliminating any required minimum term of incarceration. Mr. Hayes argued that since the old law was replaced by a new statute, he could not be sentenced under the old law. At common law with the enactment of a new statute, the new statute repealed the prior law so that the old statute could no longer be enforced.[4] Mr. Hayes also argued that he could not be sentenced under the new law because application of a statute not in effect at the time of the commission of his crime violated the ex post facto prohibition of the Federal Constitution.
The Court of Appeals, recognizing that the old statute was inapplicable, nonetheless stated:[5]
“In many if not in most cases the reasons for mitigating the severity of the punishment for any particular kind of crime would apply with equal force to those cases in which the crime had been committed before, as well as to those in which the crime might be committed subsequent to the enactment of the law, and we are aware of no policy which prevents such a construction of the constitutional provision as would permit that kind of a retrospective act. That it materially affects the punishment prescribed for a crime is not the true test of an ex *376 post facto law. In regard to punishment it must affect the offender unfavorably before it can be thus determined. It seems to us plain that there can be no reason for any other view.” (Emphasis supplied.)
The Court recognized that there exists no policy reason for not applying remedial statutes to a person who committed a crime before the ameliorative law was enacted. The Court observed that whatever reason that the Legislature had for reducing punishment would be equally applicable to crimes committed before its enactment as to crimes committed after its passage.
In 1892, the Legislature enacted what is known as a “saving clause.”[6] The saving clause provides that notwithstanding that a new statute is enacted, such enactment would not affect any rights under the old statute, and punishment imposed under the old statute is valid.
On June 21, 1932, the Court of Appeals decided People v Roper.[7] In Roper, while the case was pending, the Legislature reduced the maximum sentence for robbery in the first degree. The Court mentioned the saving clause and rejected its applicability and held that the new reduced maximum sentence applied to Mr. Roper’s pending case even though he had committed the crime prior to the effective date of the reduction of the maximum sentence (citing Hayes).
On April 26, 1956, the Court decided what has become known as the seminal case in the area of retroactivity of ameliorative statutes, People v Oliver.[8] In Oliver, on April 3, 1945, the defendant, 14 years old, killed his two-year-old sibling. The defendant was indicted for murder. After arraignment, a competency hearing was held and the defendant was found unfit to proceed and was placed in a facility for the mentally incompetent. In 1948, the Legislature enacted a statute barring the adult prosecution of 14-year-old persons for murder. In October 1954, the defendant was returned to the court as fit to proceed. On appeal, the defendant argued that the indictment should have been dismissed because the newly enacted law exonerating 14 year olds from committing murder applied to him. The People argued that, under the “saving clause,” new statutes applied only to crimes committed after the effective date.
*377 The Court of Appeals rejected the government’s argument. The Court extensively discussed the “saving clause” and found that it was enacted to prevent certain anomalies, and not to bar retroactive application of amelioratory legislation to pending cases. The Court went on to hold:[9]
“And, indeed, where an ameliorative statute takes the form of a reduction of punishment for a particular crime, the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act may have been committed before that date
“This application of statutes reducing punishment accords with the best modern theories concerning the functions of punishment in criminal law. According to these theories, the punishment or treatment of criminal offenders is directed toward one or more of three ends: (1) to discourage and act as a deterrent upon future criminal activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution. A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts.” (Emphasis supplied and citations omitted.)
The Court described the failure to retroactively apply a reduction in penalties to pending cases as “vengeance” and “nothing to be gained.” Indeed, the Court within two sentences uses the word “vengeance” to describe the failure to apply retroactively a reduction in punishment to a case pending when the mitigating legislation is enacted even though the crime was committed prior to the enactment of such legislation. The Court also *378 observed that there exists no legitimate penal policy for failing to apply a reduction of punishment to cases where judgment had not been entered.
On May 18, 1961, the Court of Appeals decided People v Konono.[10] Mr. Konono was indicted on May 16, 1957 for a crime which was elevated to a higher degree because he had committed a prior crime. Effective July 1, 1957 and prior to Mr. Konono’s trial, the Legislature prohibited the introduction of prior crime evidence if a defendant admitted the crime outside the presence of the jury. The Court held that this amelioratory statute would apply to cases indicted but not tried prior to its enactment.
On July 13, 1989, the Court of Appeals decided People v Behlog.[11] Mr. Behlog was indicted for unlawfully taking property worth more than $250 as grand larceny in the third degree. Shortly thereafter, the Legislature raised the monetary threshold for grand larceny in the third degree to stealing property having a value of more than $1,000. Under the new statute, larceny of property valued at $250 became a misdemeanor. The People alleged in the Court of Appeals that they had proven at trial that the defendant stole property worth $1,759.91.[12] Notwithstanding this fact, the Court of Appeals held that, since the indictment charged theft of $250 or more and under the new law this was a misdemeanor, the new reduction applied to the defendant. In so holding the Court said:[13]
“The general rule is that nonprocedural statutes ‘are not to be applied retroactively absent a plainly manifested legislative intent to that effect’ (People v Oliver, 1 NY2d 152, 157). There is an exception, however, when the Legislature passes an ameliorative amendment that reduces the punishment for a particular crime. In such a case ‘the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act may have been committed before that date’ (id., at 160). The rationale for this exception is that by mitigating the punishment the Legislature is necessarily presumed— absent some evidence to the contrary — to have *379 determined that the lesser penalty sufficiently serves the legitimate demands of the criminal law (id.). Imposing the harsher penalty in such circumstances would serve no valid penological purpose (id.; see also, In re Estrada, 63 Cal 2d 740, 408 P2d 948, 951-952 [following Oliver rule]).” (Emphasis supplied.)
The Court of Appeals reiterated that imposing a harsher sentence after the Legislature had reduced the punishment serves “no valid penological purpose.”
On October 12, 1993, the Court of Appeals decided People v Walker.[14] In Walker, the defendant claimed that one of his predicate felonies should not be considered as a felony because since judgment on the prior felony, the crime was reduced to a non-felony. The Court discussed retroactivity and set forth the following principles:[15]
“When, between the time a person commits a criminal act and the time of sentencing, a criminal statute is repealed or a penalty reduced because of a changed view regarding the gravity of the crime, the amelioration doctrine dictates that the punishment standard at the time of sentencing should guide the sentence (People v Oliver, 1 NY2d 152). The doctrine is rooted in the view that where a reduction in the penalty for a crime indicates a legislative judgment that the lesser penalty adequately meets all the legitimate ends of the criminal law, imposing a harsher penalty would he an exercise in vengeance, which the law does not permit (Oliver, 1 NY2d at 160).” (Emphasis supplied.)
The Court not only described the act of applying a harsher punishment to a pending case as “vengeance,” it described such application as something “the law does not permit.”
It is noted that, ultimately, the Walker court restricted the rule that ameliorative laws apply to pending cases even when the crime is committed prior to the enactment of the remedial legislation to cases in which the imposition of sentence was *380 pending and not to cases in which judgment had been imposed prior to the effective date of the legislation.[16]
In order to adopt the People’s position that the reduction of punishment by the Legislature to the Rockefeller drug laws was not retroactive to cases in which there has been no judgment entered, the court would have to find that the Legislature and the Governor acted with “vengeance,” with no “valid penological purpose” and did something that the “law does not permit.”[17]
Chapter 738 of the Laws of 2004
In the Governor’s State of the State Address delivered January 7, 2004, the Governor said:[18] “And let’s have proportionality in our laws. The Rockefeller Drug Laws allow non-violent drug offenders to be more severely punished than rapists. We need to change that. Let’s reform these antiquated laws this year.” The Governor described the punishments meted out by the Rockefeller laws as disproportionate to other criminal punishments and antiquated.
The legislative memorandum in support of the amendments, in the section described as “justification” for reducing the punishment for certain drug crimes, stated:[19]
“New York’s ‘Rockefeller Drug Laws’ have been the subject of intense criticism for many years. The current laws provide inordinately harsh punishment for low level non-violent drug offenders, warehouse offenders in state prison who could more productively be placed into effective drug treatment programs and waste valuable state tax dollars which could be used more effectively to provide drug treatment to addicts and harsh punishment to violent criminals.”
The memorandum described the old sentencing structure as “inordinately harsh” and “wasting] valuable state tax dollars.”
In addition, the law enables prisoners currently serving sentences under the old drug law to be eligible for an additional one- *381 sixth merit time. This was enacted so that the prisoners sentenced under the old law would serve a comparable prison sentence to those sentenced under the new law.
Similarly, the shortening of parole terms for old law offenders was enacted to parallel the parole requirements under the new law. This also indicates that the Legislature wanted to treat old law offenders like new law offenders.
Also, the new law permits prisoners sentenced to a class A felony sentence under the old law to make a motion for resentencing under the new law. Under the People’s argument, a court would sentence a defendant who committed a class A drug felony to the old law sentence and then that person could then immediately turn around and ask to be resentenced under the new law. It is highly unlikely that the Legislature intended such a charade.
In the Governor’s press release upon signing the bill, he commented that the bill provides “retroactive relief for virtually all non-violent drug felons.”[20] If the People are correct, there is an exception to the retroactivity for nonviolent drug felons whose cases are pending when the bill was signed.
It is clear that the Legislature intended to equalize prisoners sentenced under the old law with those sentenced under the new law. It would be anomalous if the court were required to sentence the defendants to a harsher sentence only to have the Department of Correctional Services mitigate the harshness of the sentence by applying the new provisions of the law. Sentencing is a function of the court and not the Department of Correctional Services. This court does not believe the Legislature wanted to create the charade of having this court sentence the defendants to a harsh sentence only to permit the Department of Correctional Services to mitigate the court’s sentence.
Therefore, this court will not interpret the new law to “waste valuable tax dollars,” to impose an “inordinately harsh” sentence and to impose a disproportionate sentence of an “antiquated” law. The Legislature has shown that it wished to treat old law offenders equally with new law offenders.
Given all of the above, the court finds that when the new law stated that the punishment sections were to apply to crimes committed after the effective date, the Legislature and the Governor intended this to apply to those portions of the law *382 which enhanced punishment.[21] The section was inserted to avoid any ex post facto problems to those portions that enhance punishment. Where no ex post facto issues exist, it was not the Legislature’s intent to prohibit retroactive application to cases in which judgment had not been entered. However, as held by the Walker court, the ameliorative sentencing provisions do not apply to defendants who have already been sentenced on the effective date of the legislation.
The People’s motion is denied.

. L 2004, ch 738.

. Section 41 (d-1).

. 140 NY 484 (1894).

. See People v Oliver, 1 NY2d 152, 158-159 (1956); People v Behlog, 74 NY2d 237, 240-241 (1989).

. 140 NY at 491-492.

. Currently General Construction Law §§ 93 and 94.

. 259 NY 635 (1932).

. 1 NY2d 152 (1956).

. 1 NY2d at 159-160.

. 9 NY2d 924 (1961).

. 74 NY2d 237 (1989).

. Ibid, at 242.

. Ibid, at 240.

. 81 NY2d 661 (1993).

. Ibid, at 666.

. The court is aware that the Appellate Division departments have created an exception to the retroactivity of ameliorative legislation rule where the failure to sentence a defendant is caused by misconduct of the defendant. See People v Allen, 309 AD2d 624, 624 (2003); People v Acoff, 289 AD2d 1085, 1086 (2001).

. Walker, 81 NY2d at 666.

. 2004 McKinney’s Session Law News of NY, No. 1, at A-14 (Apr. 2004).

. Assembly Mem in Support, Bill Jacket, L 2004, ch 738.

. Governor Signs Law to Reform Rockefeller Drug Laws, Dec. 15, 2004.

. This language differs significantly from the language in the statute involved in People v Festo, 96 AD2d 765, 766 (1983), affd for reasons stated below 60 NY2d 809, 811 (1983). Similarly, the language in the statutes involved in People v Pepples, 32 AD2d 1041, 1041 (1969), affd 27 NY2d 785 (1970) and People v Millard, 32 AD2d 676, 676 (1969) is substantially different than the new legislation involved here. Pepples and Millard deal with the same statute. Not only is the language different, the legislative history is also different. The language and history of a statute is important. See People v Teixeira, 87 AD2d 895, 895 (1982).