UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

LLOYD ANTHONIE WILLIAMS,
*Defendant-Appellant.*

No. 01-4869

Appeal from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CR-99-144)

Argued: October 29, 2002

Decided: January 29, 2003

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Stephen Paul Lindsay, CLONINGER, LINDSAY, HENSLEY & SEARSON, P.L.L.C., Asheville, North Carolina, for Appellant. Thomas Richard Ascik, Assistant United States Attorney, Asheville, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

## OPINION

PER CURIAM:

Lloyd Anthonie Williams appeals from the sentence imposed after
he was convicted of unlawful possession of a firearm. *See* 18
U.S.C.A. § 922(g)(1) (West 2000). We affirm in part, vacate in part,
and remand for resentencing.

### I.

In December 1997, an officer making a routine traffic stop of a car
driven by Williams saw a small silver pistol on the floor of the car
on the passenger side. Williams, a convicted felon, went to trial on a
single count of unlawful possession of a firearm; two drug-trafficking
counts were dismissed by the government. Prior to trial, the govern-
ment filed an information stating that Williams had three prior con-
victions for violent felonies or serious drug offenses and that the
government would seek an enhanced sentence under the Armed
Career Criminals Act, 18 U.S.C.A. § 924(e) (West 2000). Williams
was convicted, and the district court imposed a life sentence under the
career offender provisions of the United States Sentencing Guide-
lines.

Williams appealed his sentence and conviction to this court. We
affirmed his conviction but vacated the sentence because Williams
was not eligible for sentencing as a career offender, leaving for the
district court to determine on remand whether Williams could be sen-
tenced under the Armed Career Criminals Act (the "ACCA"). *See
United States v. Williams*, No. 99-4583 (4th Cir. June 14, 2001).

On remand, the district court concluded that Williams qualified for
sentencing as an armed career criminal. When calculating Williams'
offense level as an armed career criminal, the district court concluded
that Williams had used or possessed the firearm in connection with

a controlled substance offense, a conclusion that led to a base offense level of 34. *See* U.S.S.G. § 4B1.4(b)(3)(A) (1998). The district court sentenced Williams to 300 months imprisonment. This appeal followed.

## II.

### A.

Because Williams had previously been convicted of crimes carrying sentences of more than one year, his possession of a firearm violated 18 U.S.C.A. § 922(g)(1) (West 2000). The ACCA imposes a mandatory minimum sentence of fifteen years for section 922(g) violations if the defendant has three previous convictions "for a violent felony or a serious drug offense." 18 U.S.C.A. § 924(e)(1). On appeal, Williams contends that he is not eligible for sentencing under the ACCA because the two prior drug-related convictions upon which the district court relied do not qualify as serious drug offenses under the ACCA.[1]

The ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C.A. § 924(e)(2)(A)(ii). Williams' drug convictions arose from two separate sales of less than one gram of cocaine in North Carolina. One sale took place in October 1990, the other in August 1991. When Williams was convicted in state court, the crimes carried maximum sentences of ten years. *See* N.C. Gen. Stat. § 90-95(b)(1) (1991); N.C. Gen. Stat. § 14-1.1(a)(8) (1991). But North Carolina substantially revised its sentencing laws in 1994, and the drug crimes for which Williams was convicted are no longer subject to a 10-year maximum sentence. *See* N.C. Gen. Stat. § 90-95(b)(1) (2001); N.C. Gen. Stat. §§ 15A-1340.17(c), (d) (2001). If the maximum sentence for a predicate conviction under the ACCA is determined as of the time of the underlying conviction, then the district court properly treated Williams as an armed career criminal. But

---

[1]Williams does not dispute that a prior assault conviction qualifies as a violent felony under the ACCA.

if the maximum sentence is instead determined as of the time of sentencing on the federal 922(g) charge, then Williams should not have been treated as an armed career criminal.

On appeal, Williams contends that the language of the statute itself makes it clear that the relevant time frame is that of the federal sentencing. As noted above, the ACCA defines a "serious drug offense" as "an offense under State law . . . for which a maximum term of imprisonment of ten years or more *is* prescribed by law." 18 U.S.C.A. § 924(e)(2)(A)(ii) (emphasis added). Williams contends that by using the present tense "is," the statute requires that the predicate convictions be subject to a ten-year sentence at the time of the federal sentencing. If Congress had been concerned with the sentence the defendant faced at the time he committed the predicate crime, then the statute would have used the past tense—for example, defining "serious drug offense" as "an offense under State law . . . for which a maximum term of imprisonment of ten years or more *was* prescribed by law," or as "an offense under State law for which the defendant faced a maximum sentence of ten years or more." Williams also contends that if the language of the ACCA does not compel consideration of the maximum sentence that could be imposed at the time of the federal sentencing, then the statute is ambiguous, and the "rule of lenity" requires that the ambiguity be resolved in his favor. *See, e.g.*, *Hughey v. United States*, 495 U.S. 411, 422 (1990) (explaining that lenity principles "demand resolution of ambiguities in criminal statutes in favor of the defendant").

The only circuit court to directly address this issue agrees with Williams. *See United States v. Morton*, 17 F.3d 911, 915 (6th Cir. 1994). We need not, however, decide whether the interpretation of the ACCA urged by Williams and adopted by the *Morton* court is correct. Even assuming that the ACCA requires predicate drug-related convictions to be subject to a ten-year sentence as of the time of the federal sentencing, we still conclude that Williams was properly sentenced as an armed career criminal.

When North Carolina revised its sentencing scheme in 1994, it specifically provided that the revised sentences do not apply to crimes committed before the effective date of the revisions. *See* N.C. Gen. Stat. § 15A-1340.10 (2001); *State v. Branch*, 518 S.E.2d 213, 215

(N.C. Ct. App. 1999) (explaining that the defendant's "offenses that were committed prior to 1 October 1994, the effective date of the Structured Sentencing Act, fall under the sentencing guidelines of the Fair Sentencing Act as a matter of law"). In effect, then, North Carolina has two sentencing schemes—one governing offenses committed before October 1994 and another governing offenses committed after October 1994. Because of these parallel sentencing schemes, if Williams were to be tried and convicted today for the crimes he committed in 1990 and 1991,[2] he would be subject to the higher sentences imposed by the pre-1994 sentencing statutes. Thus, the drug crimes that Williams committed were subject to a maximum sentence of at least ten years at the time he committed the offenses and are also presently subject to a maximum sentence of at least ten years. The requirements of the ACCA, however construed, are therefore satisfied, and the district court properly sentenced Williams as an armed career criminal.

B.

Williams also argues that the two North Carolina drug convictions, which were committed on different dates, should be treated as one conviction for purposes of the ACCA because the offenses were consolidated for sentencing. As Williams recognizes, this argument has previously been rejected by this court. *See United States v. Samuels*, 970 F.2d 1312, 1315 (4th Cir. 1992) ("Nothing in § 924(e) or the Guidelines suggests that offenses must be tried or sentenced separately in order to be counted as separate predicate offenses. The only requirement is that the predicate offenses be 'committed on occasions different from one another.'" (internal citations omitted)). This issue, therefore, is without merit. *See Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir.) (explaining that "a panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court"), *cert. denied*, 122 S. Ct. 349 (2001).

---

[2]North Carolina has no statute of limitations for felony offenses. *See State v. Johnson*, 167 S.E.2d 274, 279 (N.C. 1969).

### III.

Unless other provisions of the Sentencing Guidelines impose a higher base offense level, the base offense level for an armed career criminal is 33. *See* U.S.S.G. § 4B1.4(b)(3)(B). However, if the gun giving rise to the section 922(g) charge was used or possessed "in connection with a crime of violence or controlled substance offense," the offense level is increased to 34. U.S.S.G. § 4B1.4(b)(3)(A). The district court adopted the recommendation in the presentence report ("PSR") that Williams be assigned a base offense level of 34. On appeal, Williams contends that there is insufficient evidence to support the offense-level enhancement. We agree.

The base offense level of 34 is dependent on the defendant's use or possession of "*the* firearm" in connection with a controlled substance offense. U.S.S.G. § 4B1.4(b)(3)(A) (emphasis added). Because the guideline focuses on "the firearm," rather than "a firearm," *see* U.S.S.G. § 2K2.1(c)(1), or "any firearm," *see* U.S.S.G. § 2K2.1(b)(5), we think it clear that the firearm giving rise to the defendant's section 922(g) charge and the firearm used in connection with the controlled substance offense must be one and the same. *See United States v. Sutton*, 302 F.3d 1226, 1228 (11th Cir. 2002) (per curiam) (concluding that "§ 4B1.4(b)(3)(A) is applicable only if the firearms . . . *for which the felon was convicted* were used in connection with a drug offense").

The evidence presented at the first sentencing hearing established that Williams used or possessed a firearm in connection with various drug transactions. One witness who dealt drugs with Williams said in a statement to the FBI that, during the drug transactions, Williams was always in possession of a black and chrome .380 handgun. Another witness told the FBI agent that on one occasion she saw Williams with a large quantity of cocaine and that Williams had with him then a long-barreled silver gun with a brown handle. The gun in Williams' car when he was stopped in December 1997, however, was described at trial as a small silver gun. Thus, the descriptions of the gun (or guns) connected with the drug transactions do not match that of the gun which forms the basis for Williams' section 922(g) conviction. While the evidence established that Williams used *a* firearm in

connection with a drug offense, it did not establish that Williams used *the* firearm in connection with a drug offense.

This gap in the government's evidence cannot be filled by the findings set forth in the PSR. *See, e.g.*, *United States v. Morgan*, 942 F.2d 243, 245 (4th Cir. 1991) (explaining that the district court may satisfy its duty to make specific factual findings regarding disputed sentencing issues by "expressly adopt[ing] the recommended findings contained in the presentence report"). With regard to Williams' use of a firearm in connection with a controlled substance offense, the PSR set forth the same evidence discussed above, evidence which established only that Williams possessed a firearm, not the firearm. And while the PSR recommended that Williams' sentence be enhanced because of his possession of a weapon in connection with drug offenses, the enhancement recommended in the PSR was the 4-level enhancement found in U.S.S.G. § 2K2.1(b)(5), which applies if the defendant "used or possessed *any* firearm . . . in connection with another felony offense." That enhancement, however, was largely meaningless, because Williams' offense level under section 2K2.1 was lower than the minimum offense level established by section 4B1.4. As to the offense level that should be assigned under section 4B1.4, the supplemental PSR (revised after the case was remanded for resentencing) simply stated, without mentioning the requirements of section 4B1.4(b)(3)(A), that Williams should be assigned an offense level of 34.

Because there is no factual finding in the PSR that Williams possessed *the* firearm underlying his section 922(g) conviction in connection with a controlled substance offense, the district court's adoption of the PSR's findings cannot support the enhancement of Williams' offense level. And because the government failed to present other evidence that would support the enhancement, the district court erred by assigning to Williams a base offense level of 34. *See United States v. Urrego-Linares*, 879 F.2d 1234, 1239 (4th Cir. 1989) (explaining that the government bears the burden of proving by a preponderance of the evidence the applicability of a sentencing enhancement). Instead, Williams' offense level should be 33, *see* U.S.S.G. § 4B1.4(b)(3)(B), which, with his category VI criminal history,[3] yields a sentencing

---

[3]The determination that Williams used or possessed the firearm in connection with a controlled substance offense also resulted in Williams

range of 235-293 months. On remand, the district court shall impose a sentence within this range.

### IV.

To summarize, we conclude that the district court properly sentenced Williams as an armed career criminal, but that the court erred when it concluded that Williams used the firearm that was the basis for his 18 U.S.C.A. § 922(g) conviction in connection with a controlled substance offense. We therefore affirm in part, vacate in part, and remand for resentencing in accordance with this opinion.[4]

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*

---

being assigned a category VI criminal history. *See* U.S.S.G. § 4B1.4(c)(2). Given our conclusion that the government failed to establish that Williams used "the" firearm in connection with a drug offense, reliance on the criminal history category set by section 4B1.4(c) would be error. But without regard to section 4B1.4(c), Williams' criminal history points (seventeen, as determined in the presentence report) are more than enough to place him in category VI. Although Williams conclusorily argues that the district court erred by placing him in category VI, Williams does not challenge the determination in the presentence report that his extensive criminal record results in the assignment of seventeen criminal history points.

[4]We have considered the issues raised by Williams in his *pro se* briefs and find them to be without merit.