**UNITED STATES of America**

v.

**Ricky HAMMONS, Defendant.**

**Criminal Action No. CR–05–280 (DGT).**

United States District Court,
E.D. New York.

July 18, 2006.

---

Norman Trabulus, Garden City, NY, for Defendant.

Nicole Boeckmann, United States Attorney Office, Eastern District of New York, Brooklyn, NY, for United States of America.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

Defendant Ricky Hammons has been charged with being a felon-in-possession of a firearm. The government has notified him of its intention to seek a sentencing enhancement under the Armed Career Criminal Act ("ACCA"). 18 U.S.C. §§ 922(g)(1), 924(e). Hammons challenges whether his previous state felony convictions qualify as predicate convictions under ACCA, because under state law, these felonies no longer have the mandatory maximum sentence of ten or more years. Hammons and the government have consented to have this issue decided prior to trial.

1. It is undisputed that Hammons's previous federal conviction for conspiracy to distribute cocaine base and for carrying a firearm in relation to drug trafficking qualifies as one of the three predicate crimes under ACCA. 21 U.S.C. §§ 846, 841(b)(1)(A); 18 U.S.C.

(1)

**Background**

Hammons was arrested on March 5, 2005 by his parol officers for the charge of being a felon-in-possession of a firearm. At the time of his arrest, Hammons had four previous convictions, one federal conviction [1] and three state convictions. The government has identified the three state convictions as predicate convictions for an increased sentence under ACCA. 18 U.S.C. § 924(e).

In order to be sentenced under ACCA, a defendant must have been previously convicted of three "serious drug offenses." *Id.* The statute defines a state "serious drug offense" as:

an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), *for which a maximum term of imprisonment of ten years or more is prescribed by law* [.]

18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).

Hammons pled guilty to three separate state court crimes on April 5, 1994, for which he was arrested in 1993.[2] The convictions were for the Class C New York felony of attempted criminal possession of a controlled substance with intent to sell in the third degree. N.Y. Penal Law § 220.16(1). At the time of his conviction, the maximum sentence for these crimes was 15 years (N.Y. Penal Law § 70.00(2)), a sentence sufficient to qualify under

§ 924(c)(1). He pled guilty to these crimes on March 2, 2000.

2. Hammons's federal record does not indicate the date when he committed these crimes.

ACCA, which requires at least a 10–year maximum sentence. 18 U.S.C. § 924(e)(2)(A)(ii).

The current maximum sentence for the same Class C New York felony no longer has the requisite maximum sentence under ACCA. In 2004, after a great deal of public debate, New York amended the so-called "Rockefeller drug laws," lowering the sentence for these crimes to a maximum of five and one-half years. N.Y. Penal Law § 70.70; 2004 N.Y. Laws Ch. 738 (effective January 13, 2005) (hereinafter "Rockefeller Reform Act"). Therefore, as of March 5, 2005, the time of Hammons' arrest for the instant crime, the maximum term for his previous convictions was five and one-half years.

The parties dispute what date should be used to calculate the maximum sentence for the state law felonies. Three options are possible: (1) the law applicable at the time of the actual state law conviction; (2) the law applicable at the time of the new alleged federal crime; or (3) the law applicable at the time of the sentencing for the federal offense.[3] Hammons urges that the statute applicable on the date of the new alleged federal crime should be used to determine the maximum sentence for the predicate state conviction. The government argues that the Rockefeller Reform Act is not retroactive and, therefore, if he were sentenced today for the 1994 convictions he would still be eligible for a qualifying maximum sentence.

(2)

 Hammons is not subject to a sentencing enhancement under ACCA because the state reform law sets the sentence for Hammons' past felonies below the ten-year requirement of the statute.

ACCA "leaves the standard by which to judge the seriousness of a state drug conviction to the policy of the state." *United States v. Morton,* 17 F.3d 911, 915 (6th Cir.1994) (holding that ACCA did not apply where the state had lowered the maximum sentence below ten years since the defendant's conviction). Rather than determining the seriousness of state felonies based on the length of the actual sentence, amount of drugs or any other measure, ACCA instead relies on the state's indication of the seriousness of the crimes through its sentencing policies. *See* 18 U.S.C. § 924(e)(2)(A)(ii).

In New York, these sentencing policies have been the subject of a protracted and very public debate. *See People v. Denton,* 7 Misc.3d 373, 793 N.Y.S.2d 886, 2005 N.Y. Slip Op. 25029 (Sup.Ct. Kings County 2005) (collecting articles and public statements on New York's sentencing policies for drug crimes). This debate centered on the Rockefeller drug laws, known by the gubernatorial administration that passed them, which were applicable to Hammons's 1994 state convictions. As early as 2001, the present governor called for their reform. N.Y. Gov. Ann. Mess. (2001). The sponsors of the bill described the Rockefeller drug laws as providing "inordinately harsh punishment for low level non-violent drug offenders" as well as misdirecting public funds for the incarceration of these offenders. New York Sponsors Memorandum, Ch. 738 (2004). Ultimately, in 2004, these laws were amended, lowering the maximum sentence to five and one-half years for Class C felonies, the same class of felony for which Hammons was convicted in 1994. 2004 N.Y. Laws Ch. 738.

---

3. Despite the fact that under the defendant's theory he would be successful if this date were employed, he has apparently decided not to rely on it so as to not prejudice his argument that the state convictions have to be found by a jury if they are to be used as sentencing enhancing factors. *See infra* p. 10.

In the instant matter, the government has argued that *United States v. Morton* should not apply in this case because, unlike the Tennessee statute analyzed in *Morton,* the Rockefeller Reform Act is not retroactive and if Hammons were sentenced today for his state crimes, the maximum sentence would still be over ten years. *Morton* did not discuss the retroactivity of the statute, instead relying on the shift in state policy rather than the actual sentence applicable to the defendant. *Morton,* 17 F.3d at 915. However, other circuits have distinguished *Morton* on the basis of Tennessee's retroactivity provisions and applied ACCA despite their states' new ameliorative provisions because those provisions were not retroactive. *See United States v. Davis,* 108 Fed.Appx. 131 (5th Cir.2004) (applying ACCA where the state supreme court determined that the state law should not be applied retroactively); *United States v. Williams,* 57 Fed. Appx. 553 (4th Cir.2003) (applying ACCA despite amendments to the state sentencing structure because of the state law was not retroactive); *United States v. Hinojosa,* 349 F.3d 200 (5th Cir.2003) (applying ACCA where the state's ameliorative amendments to the sentencing structure were not retroactive). The government relies on these cases to argue that ACCA should apply here because the New York law is not retroactive either. In my view, the results reached in those cases are not correct.

■ First, contrary to the government's argument, it is not at all clear that Hammons would be subject, in state court today, to a maximum sentence of over ten years for crimes of which he was convicted in 1994. New York State jurisprudence has a strong presumption of making ameliorative provisions retroactive. *See People v. Behlog,* 74 N.Y.2d 237, 543 N.E.2d 69, 544 N.Y.S.2d 804 (1989). The New York State courts have come to different determinations as to whether the ameliorative sections of the Rockefeller Reform Act should be retroactive; the issue is currently before the New York Court of Appeals. *People v. Nelson,* 21 A.D.3d 861, 804 N.Y.S.2d 1 (1st Dep't 2005) (holding that the ameliorative provisions did not apply retroactively), *leave to appeal granted,* 6 N.Y.3d 757, 843 N.E.2d 1165, 810 N.Y.S.2d 425 (2005); *compare People v. Denton,* 7 Misc.3d 373, 374, 793 N.Y.S.2d 886, 887 (Sup.Ct. Kings County 2005) (holding that the on-or-after effective date applicability provision was intended to avoid ex post facto problems as to other provisions of the amendment that enhanced some sentences, not to preclude retroactive application of the ameliorative provisions). Unlike in *Williams, Davis,* and *Hinojosa,* there is no certainty here that Hammons would receive the higher sentence.

Furthermore, even if the Rockefeller Reform Act is ultimately held to be not retroactive, the State has in fact made its new policy of lowering sentences retroactive for many sentenced defendants through other means. Thus, while only a limited class of defendants convicted and sentenced for a class A–I felony offense were given the opportunity to go before their sentencing judge for a new sentence, 2004 N.Y. Laws Ch. 738, § 23, prisoners convicted and sentenced for other class A, B and C felony offenses were granted expanded opportunities to qualify for "merit time allowances" which substantially shortened their sentences (in some cases by as much as one-third). 2004 N.Y. Laws Ch. 738, § 7, 8, 30. Thus, even if the statute is not explicitly retroactive, many if not all those sentenced for crimes prior to the effective date of the statute have access to ameliorative provisions, albeit not a resentencing.

Moreover, the State may have had policy reasons for offering new sentences for those who faced the harshest punishment and providing only ameliorative provisions for the rest in the form of "merit time allowances." The class A–1 felonies were the ones where the sentences were most severe and may have been viewed as the ones in most need of immediate relief. *See People v. Pauly*, 21 A.D.3d 595, 799 N.Y.S.2d 841 (3d Dep't 2005) (finding a rational basis for distinguishing between different classes of felonies). Were the statute made fully retroactive to all classes of felonies, implementing this provision to possibly thousands of cases would be an enormous burden on the state court system. Nevertheless, either method, resentencing or sentence reductions, would have the same effect: carrying out the State's decision to lower the sentences served.

■ Regardless of the State's method of implementing its changed policy in the drug area, it has determined that the severe penalties for drug crimes under the Rockefeller drug laws were not warranted. The statute amending the Rockefeller drug laws rejects the severity of the sentences overall. By lowering the sentences in certain instances and providing other forms of amelioration, the State brought already pronounced sentences more in line with its present view of the seriousness of the crimes. This policy decision by the State—not the mechanical result of applying the current sentencing structure to Hammons' past crimes—is what should determine, for federal law purposes, whether ACCA should apply. *Morton*, 17 F.3d at 915. It is the State's present policy ACCA seeks to implement and, therefore, that should control, especially, as discussed below, when this interpretation of ACCA accords with its plain language. *See Morton*, 17 F.3d at 915 ("[B]y looking at state sentencing law, [ACCA] leaves the standard by which to judge the seriousness of a state drug conviction to the policy of the state."). Where, as here, the State has indicated an overall rejection of the sentence structure in place at the time of the state conviction, this rejection must be considered when evaluating whether the crime is to be seen as a predicate for ACCA purposes.

As indicated, considering the current, rather than the former state sentence, comports with a plain reading of ACCA. ACCA only applies when "a maximum term of imprisonment of ten years or more *is* prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). The present tense of the verb "is" denotes that the current sentencing structure is relevant, rather than the sentence that *was* prescribed by law at the time of the earlier crime.

■ Alternatively, if, as the government has argued, the word "is" in this context actually refers to the former sentencing structure, then the government has identified an ambiguity in the statute because the other reading seems clear and certainly equally reasonable. When a sentencing statute is ambiguous, the interpretation most favorable to a criminal defendant should apply. *United States v. Simpson*, 319 F.3d 81 (2d Cir.2003) (applying the rule of lenity to the sentencing guidelines); *see also United States v. Pabon–Cruz*, 391 F.3d 86, 102, n. 19 (2d Cir. 2004) ("[W]e would hesitate to adopt the Government's position that an ambiguous penalty provision should be construed on the basis of [legislative history] against a criminal defendant."), *citing United States v. R.L.C.*, 503 U.S. 291, 305, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) ("We do not think any ambiguity survives. If any did, however, we would choose the construction yielding the shorter sentence by resting on the venerable rule of lenity rooted in the instinctive distaste against men languish-

ing in prison unless the lawmaker has clearly said they should."). "The rule of lenity states that a court cannot interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Simpson*, 319 F.3d at 86 (citation and quotations omitted). Since, if any ambiguity exists, it should be resolved in favor of the defendant, Hammons' state law convictions are not predicate convictions for ACCA purposes.

(3)

■ Hammons has urged that the maximum state sentence at the time of the alleged federal crime should apply because factors that enhance a sentence are to be determined by a jury. *United States v. Gonzalez*, 420 F.3d 111 (2d Cir.2005). However, the Second Circuit has held in similar situations that the use of prior convictions for sentence enhancement is excepted from this general rule. *United States v. Snype*, 441 F.3d 119, 148 (2d Cir.2006) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). Since the outcome in this case would be the same, regardless of whether the time frame is set at the time of the federal crime or at sentencing for the federal crime, and since *Morton* considered the maximum sentence at the time of the federal sentencing, *Morton*, 17 F.3d at 915, there is no need to reach this issue.

### Conclusion

Because Hammons' state law convictions do not have the requisite maximum sentence to trigger ACCA, the statute's sentence enhancements do not apply.

SO ORDERED.