06-4567-cr
U.S. v. Darden; U.S. v. Archer; U.S. v. Villegas; U.S. v. Williams

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: December 12, 2007                    Decided: August 15, 2008)

Docket Nos. 06-4567-cr, 06-4821-cr, 07-0025-cr, 07-2664-cr(L), 07-2869-cr(XAP)

_____

UNITED STATES OF AMERICA,

Appellee,
v.                                            No. 06-4567-cr

JOEL DARDEN,

Defendant-Appellant.

UNITED STATES OF AMERICA,

Appellant,
v.                                            No. 06-4821-cr

RALPH ARCHER,

Defendant-Apellee.

UNITED STATES OF AMERICA,

Appellant,
v.                                            No. 07-0025-cr

PEDRO A. VILLEGAS, also known as Feda Villegas,

Defendant-Appellee;

1

UNITED STATES OF AMERICA,

Appellant-Cross-Appellee,

v.                                                      Nos. 07-2664-cr(L), 07-2869-cr(XAP)

ANDRE WILLIAMS,

Defendant-Appellee-Crosss-Appellant.

_____

Before: CARDAMONE and POOLER, Circuit Judges, and KEENAN, District Judge.[*]

_____

These four appeals, heard in tandem and consolidated for disposition, raise the same legal question: whether a prior conviction for a New York drug offense can serve as a predicate "serious drug offense" under the Armed Career Criminal Act ("ACCA") where New York's Rockefeller drug laws prescribed a maximum sentence of at least ten years for the offense at the time it was committed, but where New York non-retroactively amended the Rockefeller drug laws, prior to the federal sentencing in these cases, to reduce the maximum sentence for the same offense conduct to less than ten years. We conclude that, under the plain terms of the ACCA, we must look to the current sentencing laws of the state to determine whether the drug offense is "serious." We further conclude that under current New York law, the maximum sentence prescribed for these offenses is less than ten years.

MICHAEL A. MARINACCIO, Culleton, Marinaccio & Foglia, White Plains, NY, for Defendant-Appellant Joel Darden.

_____

[*]The Honorable John F. Keenan of the United States District Court for the Southern District of New York, sitting by designation.

2

JOHN M. BURKE, Brooklyn, NY, for Defendant-Appellee Ralph Archer.

LLOYD EPSTEIN, Epstein & Weil, New York, NY, for Defendant-Appellee Pedro Villegas.

STEVEN M. STATSINGER, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, for Defendant-Appellee-Cross-Appellant Andre Williams.

PARVIN MOYNE, Assistant United States Attorney (Peter A. Norling, Evan C. Williams, James P. Loonam, Elizabeth A. Latif, and Diane Gujarati, Assistant United States Attorneys, on the briefs) for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, and for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee in No. 06-4567, for Appellants in Nos. 07-0025, 06-4821, and for Appellant-Cross-Appellee in Nos. 07-2664, 07-2869.

POOLER, Circuit Judge:

The Armed Career Criminal Act (ACCA) mandates a fifteen year minimum sentence for anyone convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), who "has three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). Section 924(e)(2)(A)(ii) defines a "serious drug offense," in relevant part, as "an offense under state law . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). These four appeals, heard in tandem and consolidated for disposition, raise the same legal question: whether a prior conviction for a New York drug offense can serve as a predicate "serious drug offense" under the ACCA, where New York's Rockefeller drug laws prescribed a maximum sentence of at least ten years for the

3

offense at the time it was committed, but where New York non-retroactively amended the Rockefeller drug laws, prior to the federal sentencing in these cases, to reduce the maximum sentence for the same offense conduct to less than ten years.

## BACKGROUND

*Darden*

Joel Darden was arrested on February 23, 2000, for possessing a handgun and ammunition. Darden pleaded guilty to possessing a firearm after having been previously convicted of an offense punishable by more than one year imprisonment, in violation of 18 U.S.C. § 922(g)(1). It is undisputed that Darden had been previously convicted of the following felonies:

1. <u>December 1989</u>: a Class B New York felony of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39.
2. <u>December 1989</u>: an ACCA predicate violent felony.
3. <u>September 1997</u>: an ACCA predicate violent felony.

Darden was sentenced on Septermber 29, 2006. At sentencing, the government argued that these three prior convictions subjected Darden to the fifteen year mandatory minimum sentence of the ACCA, in Section 924(e). The sole dispute was whether Darden's conviction for the Class B New York drug felony was a conviction for a serious drug offense. In an oral decision, Judge Johnson determined that the ACCA enhancement applied, without explaining the basis for his ruling. Judge Johnson sentenced Darden to 180 months for the underlying offense to run consecutively with a thirty month sentence for the ACCA enhancement,[2] five years supervised release, and a $100 special assessment.

---

[2]It is not clear what Judge Johnson meant by applying a thirty month enhancement for the ACCA. The ACCA creates a mandatory minimum sentence, not an enhancement. We need not parse the meaning of the imposed sentence, however, because we hold that the ACCA mandatory minimum does not apply and vacate the sentence.

4

*Archer*

Ralph Archer was arrested on May 14, 2004, for possessing a handgun. Archer pleaded guilty to possessing a firearm after having been previously convicted of an offense punishable by more than one year imprisonment, in violation of 18 U.S.C. § 922(g)(1). It is undisputed that Archer had been previously convicted of the following felonies:

1. November 1991: an ACCA predicate serious drug offense.
2. February 1995: a Class C New York felony of attempted criminal sale of a controlled substance in the third Degree, in violation of N.Y. Penal Law § 220.16(1) ("New York Class C attempted drug sale felony").
3. March 1995: a New York Class C attempted drug sale felony.[3]

Archer was sentenced on August 25, 2006. At sentencing, the government argued that these four prior convictions subjected Archer to the fifteen year mandatory minimum sentence of the ACCA, in Section 924(e). The sole dispute was whether Archer's convictions for the New York Class C attempted drug sales were convictions for serious drug offenses. Judge Holwell determined that the ACCA enhancement did not apply, explaining in a written decision that "the definition of 'serious drug offense' in the ACCA is properly interpreted as directing the court to look at the maximum term of imprisonment currently prescribed by state law," which he determined to be less than ten years for the New York Class C attempted drug sales. United States v. Archer, 461 F. Supp. 2d 213, 221 (S.D.N.Y. 2006). Judge Holwell sentenced Archer to 105 months in prison, three years of supervised release, and a $100 special assessment.

_____

[3]Archer also had a youthful offender adjudication in September 1991, which, if counted, would constitute an ACCA predicate violent felony. Following the district court, we need not decide whether Archer's youthful adjudication was a predicate offense because Archer's status as a career offender wholly turns on whether his two New York Class C convictions were convictions for serious drug offenses.

5

*Villegas*

Pedro Villegas was arrested on November 17, 2005, for possessing a handgun. Villegas pleaded guilty to possessing a firearm after having been previously convicted of an offense punishable by more than one year imprisonment, in violation of 18 U.S.C. § 922(g)(1). It is undisputed that Villegas had previously been convicted of the following felonies:

1. December 1987: a New York Class C attempted drug sale felony.
2. February 1993: an ACCA predicate violent felony.
3. November 1997: an ACCA predicate serious drug offense.

Villegas was sentenced on December 5, 2006. The Government argued that these three prior convictions subjected Villegas to the fifteen year mandatory minimum sentence of the ACCA, in Section 924(e). The sole dispute was whether Villegas's conviction for the New York Class C attempted drug sale was a conviction for a serious drug offense. In an oral decision, Judge Amon determined that the ACCA enhancement did not apply, explaining that, under the rule of lenity, the maximum sentence prescribed by current New York law for Villegas' Class C drug felony is less than ten years. Judge Amon sentenced Villegas to ninety-six months in prison, three years of supervised release, and a $100 special assessment.

*Williams*

Andre Williams was arrested on May 6, 2006, for possessing a handgun. Williams pleaded guilty to possessing a firearm after having been previously convicted of an offense punishable by more than one year imprisonment, in violation of 18 U.S.C. § 922(g)(1), and to possessing a firearm with the serial numbers obliterated, in violation of 18 U.S.C. § 922(k). It is undisputed that Williams had been previously convicted of the following felonies:

1. June 1990: a New York Class C attempted drug sale felony.
2. August 1993: an ACCA predicate violent felony.
3. August 1993: an ACCA predicate violent felony.

Williams was sentenced on May 18, 2007. At sentencing, the government argued that these three prior convictions subjected Williams to the fifteen year mandatory minimum sentence of the ACCA, in Section 924(e). The sole dispute was whether Williams' conviction for the New York Class C attempted drug sale was a conviction for a serious drug offense. Judge Gleeson determined that the ACCA enhancement did not apply, having explained in a preliminary written decision that the plain meaning of the ACCA compels the conclusion that Williams' conviction for the New York Class C drug felony was not a conviction for a serious drug offense. United States v. Williams, 462 F. Supp. 2d 342 (E.D.N.Y. 2006). Judge Gleeson sentenced Williams to eighty-four months in prison, three years of supervised release, and a $200 special assessment.

*2004 Rockefeller Drug Law Reform Act*

In 2004, after a protracted and very public debate, see People v. Denton, 793 N.Y.S.2d 886, 891 (Sup. Ct. Kings County 2005), rev'd on other grounds by 839 N.Y.S.2d 120 (App. Div. 2d Dep't 2007), New York passed the Rockefeller Drug Law Reform Act ("Reform Act"), which significantly lowered the maximum terms of imprisonment prescribed for certain drug offenses, including Class B and Class C felony drug offenses. See N.Y. Penal Law § 70.70 (McKinney 2004); 2004 N.Y. Laws Ch. 738 § 36 (effective Jan. 13, 2005). The Reform Act did not amend the statutory definitions or classifications of the underlying offenses. Except for a technical amendment in 1995, see 1995 N.Y. Laws Ch. 75, § 7, the definition and classification of the statutory offenses has not been altered since these defendants were convicted in state court.

Under the Rockefeller drug-sentencing laws in place at the time of the defendants' state convictions, a maximum term of at least ten years imprisonment was prescribed by New York

law for Class B and Class C drug offenses.  See N.Y. Penal Law § 70.00(2).  Under the current sentencing laws introduced by the Reform Act, the maximum term of imprisonment prescribed by law for the Class C drug offenses committed by Archer, Villegas and Williams, and for the Class B drug offense committed by someone, such as Darden, with no prior drug felonies, is less than ten years.  See N.Y. Penal Law §§ 70.70(4)(b)(ii) (providing that maximum sentence for Class C drug felony committed by someone in worst criminal history class is nine years) and 70.70(2)(a)(i) (providing that maximum sentence for Class B drug felony committed by first-time felony drug offender is nine years).  The Reform Act, however, did not become effective until January 13, 2005, and the current sentencing laws do not apply to crimes committed before the effective date.  See People v. Utsey, 7 N.Y.3d 398, 401 (2006).

Thus, if the defendants were to engage in the same conduct today, their offenses would carry a maximum term of less than ten years.  However, because the Reform Act is not retroactive, if the defendants were somehow sentenced today for the specific, pre-Reform-Act conduct that led to their prior convictions, the defendants would be subject to a maximum term of at least ten years.

## DISCUSSION

The ACCA defines a "serious drug offense," in relevant part, as "an offense under State law . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).  The sole issue consolidated for disposition on appeal is whether a prior state conviction was a conviction for a  "serious drug offense" within the meaning of the ACCA, where state law prescribed a maximum sentence of at least ten years for the offense at the time of the state conviction but state law, prior to federal sentencing, prospectively reduced the

maximum sentence to less than ten years for the same offense conduct.[4]  This is an issue of first

impression in our circuit.  Because the issue turns solely on an interpretation of a federal statute,

our review is de novo.  See, e.g., United States v. King, 325 F.3d 110, 113 (2d Cir. 2003).

In order to resolve this issue, we must first decide whether to apply the state's current

sentencing laws or the state's sentencing laws in place at the time of the state conviction.

Because we conclude that the ACCA directs courts to apply the state's current sentencing laws,

we must next decide whether the maximum term currently prescribed by New York state law for

these offenses is at least ten years.  Under the Reform Act, these offenses are punishable by a

maximum term of less than ten years.  A complication arises, however, because due to a

prospective effective-date clause in the Reform Act, New York continues to permit the

imposition of a maximum term greater than ten years for offenses committed before the Reform

Act's effective date.

**I. Current State Law**

We first address whether, in determining the maximum term that is prescribed by state

law for an offense, we should examine current state law or the state law in place at the time of the

state conviction.  Following every court to reach the issue, we conclude that sentencing courts

---

[4]We do not address the question of how to treat a state law, enacted after the state
conviction but prior to federal sentencing, that increases the penalty for a drug crime.  This might
raise ex post facto concerns, which we have no occasion to consider.  Cf. United States v.
Keigue, 318 F.3d 437, 442 (2d Cir. 2003) ("The Sentencing Guidelines explicitly mandate that a
court use the version of the Guidelines in effect on the date of the defendant's sentencing.  The
exception to this rule arises when the version of the Guidelines in effect at the time of sentencing
is more 'severe,' than the version in effect when the offense was committed.  In such cases, there
is an ex post facto problem and the earlier Guidelines should be applied." (internal citations and
quotation marks omitted)).

should examine current state law.[5]  See United States v. Morton, 17 F.3d 911, 915 (6th Cir. 1994); United States v. Hammons, 438 F. Supp. 2d 125, 128 (E.D.N.Y. 2006);[6] Archer, 461 F. Supp. 2d at 219; Williams, 462 F. Supp. 2d at 345; cf. United States v. Hinojosa, 349 F.3d 200, 205 (5th Cir.2003) (applying current state law, but not deciding whether current or past state law governs).  Our reason is simple: the ACCA's definition of a "serious drug offense" uses the present tense in referring to the applicable state law.  If Congress had wanted sentencing courts to examine the state law in place at the time of the state conviction, it could have easily so provided by defining a "serious drug offense" as "an offense under state law . . . for which a maximum term of imprisonment of ten years was prescribed by law at the time of conviction."  Rather than choosing this course, Congress enacted the ACCA, which refers to the maximum sentence that "is prescribed" by state law.  The present tense signals that sentencing courts should examine the state's current sentencing scheme.  See Hammons, 438 F. Supp. 2d at 130 ("The present tense of the verb 'is' denotes that the current sentencing structure is relevant, rather than the sentence that was prescribed by law at the time of the earlier crime."); Williams, 462 F. Supp. 2d at 344 ("There is no linguistic or . . . logical basis for reading the statute to embrace those state drug convictions for which a maximum term of imprisonment of ten years or more was prescribed by law . . . .  In short, 'is' means 'is,' not 'is or was . . . .'").

---

[5]In Darden, Judge Johnson concluded that the conviction was for a serious drug offense, but did not explain the basis of this conclusion.  It is therefore unclear whether Judge Johnson determined that prior state law applied or that current state law applied, but the maximum term prescribed by current state law is more than ten years.

[6]In Hammons, Judge Trager concluded that a pre-Reform-Act conviction for a New York Class C drug felony was not a conviction for a serious drug offense.  No appeal was taken from that decision.

Moreover, this plain reading of the statute is confirmed by the statute's purpose. Congress could have defined a "serious drug offense" in a any number of ways: Congress could have defined the seriousness of a drug offense in terms of the weight and type of the drugs involved; Congress could have defined the seriousness of a drug offense in terms of the actual state sentence imposed on the particular defendant. Rather, Congress defined the seriousness of a drug offense in terms of the maximum sentence that is prescribed by state law. As the Supreme Court recently explained, the purpose of this definition is to defer to the sentencing policy of each state as the measure of the seriousness of the drug offense.

> In § 924(e)(2)(A)(ii), Congress chose to rely on the 'maximum term of imprisonment . . . prescribed' by state law as the measure of the seriousness of state offenses involving the manufacture, distribution, or possession of illegal drugs. Congress presumably thought–not without reason–that if state lawmakers provide that a crime is punishable by 10 years' imprisonment, the lawmakers must regard the crime as 'serious,' and Congress chose to defer to the state lawmakers' judgment.

United States v. Rodriquez, 128 S.Ct. 1783, 1790 (2008)[7]; see Morton, 17 F.3d at 915 ("What is evident . . . is that section 924(e)(2)(A)(ii), by looking to state sentencing law, leaves the standard by which to judge the seriousness of a state drug conviction to the policy of the state.").

In light of this statutory purpose, it was eminently reasonable for Congress to defer to the state lawmaker's _current_ judgment rather than to the state lawmaker's discarded judgment. Thus, a consideration of the statutory purpose confirms our plain reading of the statute's text: judges should examine the state law in place at the time of the federal sentencing.[8]

---

[7]There was no suggestion in Rodriquez that the relevant maximum terms had been amended since the state conviction; thus, the Rodriquez Court had no occasion to consider whether, after an intervening amendment, the state's current or prior law should be consulted.

[8]All of the defendants committed the felon-in-possession offense prior to the enactment of the Reform Act but all of them were sentenced in federal court subsequent to the Reform Act's effective date. The ACCA directs courts to examine the maximum term "that is" prescribed by state law. Courts make this assessment at the time of federal sentencing. The present tense of the statute thus dictates that courts should examine the state law in place at the time of the federal

## II. Non-Retroactivity

We next address whether, under current New York law, the maximum sentence prescribed for the defendants' offenses is at least ten years. The difficulty is that New York's current law is not retroactive. There are two apparently conflicting decisions on this issue in our sister circuits.

In Morton, the Sixth Circuit reasoned that it was "evident" that "section 924(e)(2)(A)(ii), by looking to state sentencing law, leaves the standard by which to judge the seriousness of a state drug conviction to the policy of the state." 17 F.3d at 915. Accordingly, because, at the time of federal sentencing, "the State of Tennessee did not consider [the defendant's drug offense] . . . serious enough to impose a ten-year sentence," the Court concluded that the defendants' prior conviction was not a serious drug offense. Id. The Morton Court did not explicitly discuss whether the amended state statute was made retroactive, but the Court noted that, as in this case, the state statute had an explicit, prospective effective date. Id. at 914.[9]

In Hinojosa, the Fifth Circuit attempted to distinguish Morton on the ground that the amended state statute relevant to Hinojosa's conviction, which reduced the maximum term of

_____

sentencing, not the state law in place at the time when the federal offense was committed. See Morton, 17 F.3d at 915 (applying state law in place at time of federal sentencing); cf. Keigue, 318 F.3d at 442 ("The Sentencing Guidelines explicitly mandate that a court use the version of the Guidelines in effect on the date of the defendant's sentencing.").

[9]The Morton Court explained that under the amended Tennessee statute, the defendant's offense conduct "has been reclassified from a Class B to a Class C felony," which carries a lower sentence. 17 F.3d at 914. In an unpublished decision, a Tennessee appellate court explained that when a person committed a Class B offense prior to this statute's effective date, which was reclassified to a less serious Class C offense before his sentencing, "the trial court had the authority to impose class B felony sentences for the convictions." Williams v. State, 2004 WL 948370, at *4 (Tenn. Crim. App. 2004). If this is correct, then the Tennessee statute is not retroactive in the relevant sense.

imprisonment to less than ten years, was not made retroactive. 349 F.3d at 205. Relying on the

non-retroactivity of the amended state statute, the Hinojosa Court held that the prior state

conviction was for a serious drug offense because if the defendant "were sentenced by the state

court for those crimes today, he would still be subject to a maximum term of at least ten years."

Id. [10]

There are two ways of framing the relevant question: First, it might be asked, following

the Hinojosa Court, what maximum term is prescribed by current state law for someone who

committed the offense conduct *on the date the defendant committed the offense*. Second, it might

be asked what maximum term is prescribed by current state law for the offense conduct, without

regard to the date on which the defendant happened to commit the offense. The choice between

these two methods of framing the question turns on whether the date of the commission of the

offense is properly regarded as part of the "offense . . . for which" the maximum term is

prescribed by law. 18 U.S.C. § 924(e)(2)(A)(ii).[11]

---

[10]As discussed above, all four district courts in our circuit that explained their decisions on this issue held that, notwithstanding the non-retroactivity of the Reform Act, the maximum sentence proscribed by current New York law for the offenses at issue in the present case is less than ten years.

[11]The choice might also turn on a constitutional problem potentially created by the first method of framing the question. In New York, a defendant sentenced today who committed the offense prior to January 13, 2005, is subject to a higher maximum term than someone who committed the identical offense after that date. In this way, the fact that the offense was committed prior to January 13, 2005, is a fact used to increase the maximum term of imprisonment. However, under the Apprendi line of cases, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The difficulty is that, because the New York penal law does not criminalize the timing of the offense, the timing of these offenses was not submitted to a jury, and proved beyond a reasonable doubt. Thus, if a state court were to sentence these defendants today, it is not clear whether the state court could, consistent with the Sixth Amendment, take account of the timing of their offenses to increase their maximum term, given

13

The Supreme Court's recent Rodriquez decision, which addressed the same definition in the ACCA of a "serious drug offense," causes us to examine the issue a bit more closely. The key statutory terms are "offense," "law" and "maximum term." Rodriquez, 128 S.Ct. at 1787. In Rodriquez, the Supreme Court explained that an "offense" simply means the violation of the governing criminal statute. 128 S.Ct. at 1787.[12] Here, the New York statutes defining the offense conduct, and setting out the felony classifications, have not been meaningfully amended since the state convictions. Thus, Darden's relevant "offense" is having sold a controlled substance, of a statutorily specified weight and type class, in violation of New York Penal Law § 220.39; Archer's, Williams' and Villegas' relevant offenses are having attempted to sell controlled substances, of a statutorily specified weight and type class, in violation of New York

that this fact was not submitted to the jury or necessarily made part of their convictions. This problem did not arise in Rodriquez because that case dealt with the fact of a prior conviction, which falls within the Apprendi exception. By contrast, the Supreme Court has never created a Sixth Amendment exception for using the fact of offense-timing to increase a maximum term.

[12]When this case was briefed and argued, the parties relied heavily on Taylor v. United States, 495 U.S. 575 (1990). In Rodriquez, the Supreme Court saw "no connection . . . between the issue in Taylor (the meaning of the term 'burglary' in § 924(e)(2)(B)(ii)) and the issue here (the meaning of the phrase 'maximum term of imprisonment . . . prescribed by law' under § 924(e)(2)(A)(ii))." 128 S.Ct. at 1790. In holding that an "offense" simply means the violation of the governing statute, the Rodriquez Court appeared to reject Rodriquez's argument that, under Taylor and common usage, an "offense" is "generally . . . understood to describe the elements constituting a crime." Id. at 1788. If the statutory term "offense" were interpreted to mean the elements constituting a crime, and the "maximum term" referred to the maximum term prescribed for someone who committed the basic offense elements, the defendants in this case would certainly prevail because there can be no suggestion that the timing of the illegal drug conduct, nowhere mentioned in the governing penal law, is an element of the drug offenses under New York law. As will be discussed below, the Rodriquez Court's definition of "offense," interpreted in light of the ACCA's purpose, yields similar results: conduct that increases a maximum term of imprisonment is part of the "offense" to which the "maximum term" is tied only if the state views that conduct as bearing on the seriousness of the offense.

Penal Law § 220.16(1). The "law" is the state law that prescribes the applicable sentencing range for the offense and the "maximum term" is the maximum sentence that can be imposed for the offense. Rodriquez, 128 S.Ct. at 1787-88.

In Rodriquez, the question was whether the "maximum term of imprisonment" for the purposes of § 924(e)(2)(A)(ii) is determined with or without reference to recidivist enhancements. Id. at 1787. The state sentencing law prescribed a maximum term of five years' imprisonment for a first-time violator of the drug-trafficking statute but a maximum term of ten years' imprisonment for a subsequent violator of the same drug-trafficking statute. Id. at 1786-87. The Court held that the increased maximum term applicable to recidivists was the maximum term prescribed for the offense by state law. Id. at 1788. The defendant had argued, in effect, that the state law punished two different offenses: the state punished the drug-trafficking offense by a maximum term of five years and the state punished the offender's status as a recidivist by an additional maximum term of five years. Id. Thus, the defendant argued, the maximum term prescribed by law for the drug-trafficking offense was only five years. Id. Similarly, the defendant, drawing on the ACCA definition's purpose of deferring to state lawmakers' judgment about the seriousness of a drug-trafficking offense, argued that the increased maximum term applicable to recidivists should not be used to measure the seriousness of the drug-trafficking offense because the defendants' status as a recidivist has no bearing on the seriousness of the drug-trafficking offense. Id. at 1789. The Court rejected this argument on the ground that it "rest[ed] on the erroneous proposition that a defendant's prior record of convictions has no bearing on the seriousness of an offense." Id. As the Court explained, "an offense committed by a repeat offender is often thought to reflect greater culpability and thus to merit greater punishment." Id.

15

More broadly, the Court rejected the premise, common to both arguments, that recidivist statutes punish something other than the offense of conviction.

> If [the defendant] were correct that a defendant's record of prior convictions has no bearing on the seriousness of an offense, then it would follow that any increased punishment imposed under a recidivist provision would not be based on the offense of conviction but on something else–presumably the defendant's prior crimes or the defendant's "status as a recidivist." But we have squarely rejected this understanding of recidivism statutes. . . . [T]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant. When a defendant is given a higher sentence under a recidivism statute . . . 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's "status as a recidivist." The sentence is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.

Id. at 1789 (internal quotation marks and citations omitted; third alteration in original). It is not clear whether the Court considered the defendant's recidivism to be part of the offense of conviction.[13] What is clear is that the Court determined that when a state prescribes a higher maximum term based on the recidivist nature of the offense, "100% of the punishment is for the offense of conviction." Id. (emphasis added).

We do not read this discussion as dicta. Both the text and the purpose of the ACCA definition of a "serious drug offense" require an analysis of whether an enhanced maximum term is for the drug-trafficking offense of conviction. The ACCA defines a "serious drug offense" as a drug-trafficking "offense . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. 924(e)(2)(A)(ii). Thus, the ACCA's text requires a determination of whether an enhanced maximum term is punishment for the drug-trafficking

_____

[13]On the one hand, the Rodriquez Court stated that a recidivist offense is an "aggravated offense," suggesting that recidivism is part of the (aggravated) offense. Id. On the other hand, the Rodriquez Court stated that "[t]he 'offense' in each of the drug-delivery cases was a violation of [Revised Code of Washington] §§ 69.50.401(a)(ii)-(iv)." Id. at 1787-88. The referenced Washington statute, which defines the drug-trafficking crime, makes no mention of recidivism, suggesting that recidivism is not part of the offense.

16

offense. Similarly, and perhaps more important, the purpose of the ACCA definition is to "defer to state lawmakers' judgment" of the seriousness of a drug offense, Rodriquez, 128 S.Ct. at 1790, as expressed in the state's current sentencing laws. If a state determines that a drug-trafficking offense merits less than ten years' maximum imprisonment, but permits the imposition of a higher maximum sentence in an individual case for technical reasons that have no bearing on the state's current view of the seriousness of the offense, it would frustrate the purpose of the ACCA to conclude that the drug-trafficking offense is a serious one. Cf. Begay v. United States, 128 S.Ct. 1581, 1587 (2008) (interpreting the ACCA's parallel definition of a "violent felony" as "viewed in terms of the Act's basic purposes").

Accordingly, following the Rodriquez Court, we conclude that conduct that increases the maximum term of imprisonment is part of the "offense of conviction," to which the "maximum term" is tied for purposes of the ACCA, only if the conduct, in the state's view, bears on the "seriousness of [the] offense." Rodriquez, 128 S.Ct. at 1789. The question, at bottom, is whether, in punishing the earlier timed nature of the offense more severely, the state is meting out extra punishment for the drug-trafficking offense of conviction.

As the Rodriquez Court explained, there is no question that a subsequent drug-trafficking offense is a "more serious" drug-trafficking offense than a first drug-trafficking offense, which the state views as deserving "greater punishment." See id. at 1789. Our question is whether, under New York law, the fact that a drug offense was committed before January 13, 2005, makes the offense "more serious" than an offense committed after that date.

To be sure, there are some crimes that are more or less serious depending on the timing of the offense conduct. See, e.g., United States v. Mortimer, 52 F.3d 429, 434 (2d Cir. 1995) (noting that "failure to register for a military draft may be a more serious offense punished more

17

harshly during a time of war than in peacetime"). But a drug crime is not plausibly in this category. The Reform Act, and its legislative history, amply confirm that New York does not view drug crimes committed before January 13, 2005, as "more serious" than drug crimes committed after that date. Rather, the non-retroactivity provision was almost surely enacted to combat problems of retroactive administration. See Hammons, 438 F. Supp. 2d at 130 ("Were the statute made fully retroactive to all classes of felonies, implementing this provision to possibly thousands of cases would be an enormous burden on the state court system.").

To begin, unlike the explicit statutory recidivism enhancement at issue in Rodriquez, the Reform Act does not contain an explicit enhancement for drug crimes committed before January 13, 2005. Rather, the only indication in the Reform Act that drug crimes committed before the effective date would remain subject to the higher maximum terms is found in the Reform Act's effective-date clause. Except for the lingering effects created by this effective-date clause, the Rockefeller drug sentencing laws were repealed entirely.

Second, the legislative history of the Reform Act amply confirms that the purpose of the Reform Act was to replace the harsh Rockefeller sentencing laws with more appropriate sentencing laws, not to recognize a new class of drug offenses that were less serious because they were committed after the statute's effective date. The legislative sponsors of the New York bill, in a section described as "justification" for the sentencing reductions, described the Rockefeller drug laws as providing "inordinately harsh punishment for low level non-violent drug offenders" as well as misdirecting public funds for the incarceration of these offenders. See New York Sponsors Memorandum, Ch. 738 (2004) ("New York's 'Rockefeller Drug Laws' have been the subject of intense criticism for many years. The current laws provide inordinately harsh punishment for low level non-violent drug offenders, warehouse offenders in state prison who

18

could more productively be placed into effective drug treatment programs and waste valuable state tax dollars which could be used more effectively to provide drug treatment to addicts and harsh punishment to violent criminals."). The governor, in calling for the legislation, expressed a similar categorical rejection of the harshness of the Rockefeller sentencing laws. See Governor's State of the State Address delivered January 7, 2004, 2004 McKinney's Session Law News of N.Y., No. 1, at A-14 (Apr. 2004) ("The Rockefeller Drug Laws allow non-violent drug offenders to be more severely punished than rapists. We need to change that. Let's reform these antiquated laws this year."). The consistent view of these state lawmakers was that the Rockefeller drug-sentencing laws were too severe, then as now.

If there is any doubt that the Reform Act reflected a categorical rejection of the harshness of the Rockefeller sentencing laws, no matter when the underlying offenses occurred, this doubt is dispelled by the Reform Act's inclusion of unique sentencing reductions for those sentenced under the discarded, "inordinately harsh" Rockefeller laws. Prisoners convicted under the old laws for Class B and Class C drug felonies were granted unique, expanded opportunities to qualify for sentencing reductions that substantially lowered their sentences (from up to one-sixth to, in some instances, one-third of the sentence imposed) and to obtain early termination of parole. See N.Y. Laws Ch. 738, §§ 7, 8, 30 (2004); Utsey, 7 N.Y.3d at 403 (noting that the statute includes "ameliorative provisions designed to afford distinct sentencing relief to defendants who committed their crimes prior to its effective date"). This confirms that, in the state's view, the new policy of lowered sentences should be made available to everyone convicted of these drug offenses, no matter when the offenses were committed.

In sum, "there is no reason to believe that the nonretroactivity of the Reform Act reflects a state legislative view that pre-Reform Act drug felonies were categorically more serious than

those taking place after it was enacted." Williams, 462 F. Supp. 2d at 347; see also Hammons, 438 F. Supp. 2d at 129-30. Accordingly, we conclude that the timing of the offense conduct is not part of the offense of conviction to which the maximum term is tied for purposes of the ACCA.

There is a final reason why we do not consider the state's non-retroactivity decision significant in this context. The Supreme Court recently explained that the decision whether to make a newly recognized legal right retroactive is normally a remedial decision that should not be confused with an assessment of the temporal scope of the legal right. See Danforth v. Minnesota, 128 S.Ct. 1029, 1035 (2008) ("What we are actually determining when we assess the 'retroactivity' of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought."). Similarly here, the Reform Act reflects the state's current normative judgment about the seriousness of these offenses and this normative judgment plainly applies to past crimes as well as new crimes. The state's decision not to make its current sentencing laws retroactive–but rather to redress the inequities created by the state's "inordinately harsh" sentencing laws through other ameliorative provisions–is a remedial decision, which has no bearing on the state's current view that drug crimes of this nature, no matter when committed, merit less than a ten year maximum sentence.

Because the ACCA instructs courts to defer to state lawmakers' current judgment about the seriousness of an offense as expressed in their current sentencing laws, we defer to New York's current judgment that these offenses merit less than a ten year maximum sentence. See Williams, 462 F. Supp. 2d at 345 ("For first time C drug felons, the 'New Law' prescribes a five and one-half year maximum. That is the maximum sentence that is now prescribed by New York

20

law. That a dwindling class of offenders may still be subject to sentencing under the 'Old Law' does not alter the fact that it is the old law." (internal citation omitted)); Hammons, 438 F. Supp. 2d at 130 ("By lowering the sentences in certain instances and providing other forms of amelioration, the State brought already pronounced sentences more in line with its present view of the seriousness of the crimes. This policy decision by the State–not the mechanical result of applying the current sentencing structure to Hammons' past crimes--is what should determine, for federal law purposes, whether ACCA should apply.").

## CONCLUSION

The ACCA, interpreted in light of its purpose, leaves no ambiguity: the maximum sentence that "is prescribed" by state law for these offenses is less than ten years. However, if any ambiguity remained, there being no contrary legislative history, see Archer, 461 F. Supp. 2d at 219 n. 4, and there being a strong argument to interpret the statute in the way we do, we would apply the rule of lenity to reach the same conclusion. See United States v. R.L.C., 503 U.S. 291, 305 (1992) ("We do not think any ambiguity survives. If any did, however, we would choose the construction yielding the shorter sentence by resting on the venerable rule of lenity rooted in the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." (internal citation omitted)).

For the foregoing reasons, Darden's sentence is vacated and the matter is remanded;[14] Archer's and Villegas's sentences are affirmed; and Williams's sentence is affirmed in part.[15]

---

[14]Darden also challenges the reasonableness of his sentence. Because we vacate his sentence, we have no occasion to rule on the reasonableness of a sentence not yet imposed.

[15]Williams' request to defer briefing on his cross-appeal is granted and the clerk's office is directed to set a briefing schedule for his cross-appeal.