Certiorari granted, January 7, 2011
Affirmed by Supreme Court, June 6, 2011

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CLIFTON TERELLE MCNEILL,

*Defendant-Appellant.*

No. 09-4083

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, District Judge.
(5:08-cr-00002-D-1)

Argued: January 29, 2010

Decided: March 8, 2010

Before TRAXLER, Chief Judge, NIEMEYER, Circuit
Judge, and Jackson L. KISER, Senior United States District
Judge for the Western District of Virginia,
sitting by designation.

Affirmed by published opinion. Chief Judge Traxler wrote the
opinion, in which Judge Niemeyer and Judge Kiser joined.

## COUNSEL

**ARGUED**: James Edward Todd, Jr., OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Raleigh, North Carolina, for

Appellant. Anne Margaret Hayes, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

TRAXLER, Chief Judge:

Clifton Terelle McNeill appeals from the sentence imposed after he was convicted of unlawful possession of a firearm and unlawful possession with intent to distribute approximately 3.1 grams of crack cocaine. *See* 18 U.S.C.A. §§ 922(g)(1) (West 2000); 21 U.S.C.A. § 841(a)(1) (West 2000). We affirm.

I.

On February 28, 2007, Fayetteville, North Carolina police officers attempted to effect a routine traffic stop after observing a car driven by McNeill travel through a red light. McNeill evaded the police for several miles. He then made an abrupt stop and fled from his vehicle. An officer tackled McNeill and found a .38-caliber Smith & Wesson revolver lying on the ground underneath McNeill's body. A search of McNeill revealed 3.1 grams of crack cocaine, packaged for distribution, along with $369 in U.S. currency.

McNeill was subsequently indicted for unlawful possession of a firearm (Count One), 18 U.S.C.A. § 922(g)(1), posses-

sion with intent to distribute crack cocaine (Count Two), 21 U.S.C.A. § 841(a)(1), and possession of a firearm during and in relation to a drug trafficking crime (Count Three), 18 U.S.C.A. § 924(c)(1)(a)(i) (West 2000). McNeill pleaded guilty to Counts One and Two, and Count Three was dismissed at sentencing. The court determined McNeill to be an armed career criminal and then departed upward from the United States Sentencing Guidelines to sentence McNeill to 300 months' imprisonment on Count One and 240 months' imprisonment on Count Two, the maximum sentence applicable to McNeill under 21 U.S.C.A. § 841(b)(1)(C) (West 2000).

## II.

McNeill first argues that the district court erred in sentencing him as an armed career criminal because only two of the previous offenses relied on by the district court in applying the enhancement qualify as predicate offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C.A. § 924(e) (West 2000). "Whether [a prior] conviction qualifies as a predicate conviction under section 924(e) is a question of statutory interpretation [that we] review[ ] *de novo*." *United States v. Brandon*, 247 F.3d 186, 188 (4th Cir. 2001).

Because McNeill had been previously convicted of crimes carrying sentences of more than one year, his possession of a firearm violated 18 U.S.C.A. § 922(g)(1). The ACCA imposes a mandatory minimum sentence of 15 years for section 922(g) violations if the defendant has three previous convictions "for a violent felony or a serious drug offense." 18 U.S.C.A. § 924(e)(1). McNeill contends that he is not eligible for sentencing under the ACCA because the drug-related convictions upon which the district court relied do not qualify as serious drug offenses under the ACCA.[1]

---

[1]McNeill does not dispute that he has two other qualifying convictions: one for assault with a deadly weapon and one for common law robbery.

As is relevant here, the ACCA defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C.A. § 924(e)(2)(A)(ii). The probation officer who prepared McNeill's presentence report identified McNeill's 1992 and 1995 convictions in North Carolina for selling cocaine and possession with intent to sell cocaine as predicates for the defendant's armed career criminal status. At the time McNeill committed these offenses, the crimes carried maximum sentences of ten years. *See* N.C. Gen. Stat. § 15A-1340.1, *et seq.* (repealed 1993); N.C. Gen. Stat. § 14-1.1 (repealed 1993). North Carolina subsequently revised its sentencing laws, and under the 1994 Structured Sentencing revisions, the crimes underlying McNeill's drug convictions now carry a maximum penalty of 25 months in prison. *See* N.C. Gen. Stat. § 15A-1340.17.

The district court held that the maximum sentence for a predicate conviction under the ACCA is determined as of the time of the underlying offense. McNeill, however, argues that the plain language of the statute makes clear that in order to qualify as a "serious drug offense," the state offense must carry a maximum penalty of at least ten years in prison at the time of the defendant's *federal* sentencing. As quoted above, the ACCA defines "serious drug offense" as "an offense under State law . . . for which a maximum term of imprisonment of ten years or more *is* prescribed by law." 18 U.S.C.A. § 924(e)(2)(A)(ii) (emphasis added). McNeill reasons that the statute's use of the present tense "is" reflects congressional intent to defer to a state's current judgment regarding whether it deems a particular drug offense serious.

In support of his view, McNeill points us to *United States v. Morton*, 17 F.3d 911 (6th Cir. 1994), in which the Sixth Circuit held that principles of lenity required the district court to determine whether the defendant's previous convictions

were serious drug offenses at the time of the federal sentencing. *See id.* at 915. Because Tennessee did not consider the defendant's previous trafficking offenses serious enough to impose a ten-year sentence at the time of sentencing, the *Morton* court vacated the district court's sentence and remanded for resentencing. *See id.*

McNeill also relies on *United States v. Darden*, 539 F.3d 116, 121 (2d Cir. 2008). In *Darden*, the Second Circuit found that the maximum term prescribed by state law for an offense should be determined according to the law at the time of the federal sentencing for the simple reason that "the ACCA's definition of a 'serious drug offense' uses the present tense in referring to the applicable state law." *Id.* Additionally, the Second Circuit looked to the statute's purpose—"to defer to the sentencing policy of each state as the measure of the seriousness of the drug offense"—and decided it was "eminently reasonable for Congress to defer to the state lawmaker's *current* judgment rather than to the state lawmaker's discarded judgment." *Id.* at 122 (emphasis in original). Moreover, the Second Circuit determined that the nonretroactivity of the sentencing reform had no bearing on whether an offense is a serious drug offense. It stated that "the decision whether to make a newly recognized legal right retroactive is normally a *remedial* decision that should not be confused with an assessment of the temporal scope of the legal right." *Id.* at 127 (citing *Danforth v. Minnesota*, 552 U.S. 264 (2008)) (emphasis in original). Accordingly, the court found that the "timing of the offense conduct is not part of the offense of conviction to which the maximum term is tied for purposes of the ACCA." *Id.*

The Fifth Circuit, however, reached a contrary conclusion in *United States v. Hinojosa*, 349 F.3d 200 (5th Cir. 2003). The *Hinojosa* court held that the defendant's three drug convictions that predated the effective date of the revisions to Texas's criminal code qualified as "serious drug offenses" under the ACCA. *See id.* at 205. The court noted that, unlike

the Tennessee sentencing scheme at issue in *Morton*, Texas's revised scheme "specifically provides that the revised sentences do not apply to crimes committed before the effective date of the revisions." *Id.* The court concluded that "even under *Morton*, [the defendant's] previous convictions would be for 'serious drug offenses' because if he were sentenced by the state . . . today, he would still be subject to a maximum term of at least ten years." *Id.*

When North Carolina revised its sentencing scheme in 1994, it specifically provided that the revised sentences would not apply to crimes committed before the effective date of the revisions. *See* N.C. Gen. Stat. § 15A-1340.10; *State v. Branch*, 518 S.E.2d 213, 215 (N.C. Ct. App. 1999) (explaining that the defendant's "offenses that were committed prior to 1 October 1994, the effective date of the Structured Sentencing Act, fall under the sentencing guidelines of the Fair Sentencing Act as a matter of law"). In effect, then, North Carolina has two sentencing schemes – one governing offenses committed before October 1, 1994, and another governing offenses committed after October 1, 1994. In this regard, North Carolina's revised sentencing scheme is similar to the Texas sentencing scheme at issue in *Hinojosa*, and we find the Fifth Circuit's reasoning in that case to be persuasive. Contrary to the interpretation of the Second Circuit in *Darden*, the date on which McNeill committed his crime is critical to the determination of his sentence under North Carolina law. If McNeill were tried and convicted today for his drug offenses committed in 1991, 1992, and September 1994,[2] he would be subject to the higher sentences imposed by the pre-October 1994 sentencing statutes. McNeill's previous felony drug convictions were punishable by a maximum term of imprisonment of at least ten years both at the time he committed the offenses and at the time of his federal sentencing.

---

[2]North Carolina has no statute of limitations for felony offenses. *See State v. Johnson*, 167 S.E.2d 274, 279 (N.C. 1969).

Therefore, we conclude that McNeill was properly sentenced as an armed career criminal.

### III.

McNeill also argues that the district court erred in finding that the criminal history category of VI substantially underrepresented the seriousness of his criminal history and likelihood of recidivism. He claims that the career offender and armed career criminal enhancements already encompassed the recidivism and criminal history factors that guide an upward departure under U.S.S.G. § 4A1.3.

"[A]n appellate court must defer to the trial court and can reverse a sentence only if it is unreasonable, even if the sentence would not have been the choice of the appellate court." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008) (emphasis omitted) (citing *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); and *Rita v. United States*, 551 U.S. 338 (2007)). When reviewing a departure, we consider "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." *United States v. Hernandez-Villanueva*, 473 F.3d 118, 123 (4th Cir. 2007).

A district court may depart upward based on the inadequacy of the defendant's criminal history if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). Contrary to McNeill's argument that an upward departure is contemplated only where armed career criminals have a criminal history category IV or V, it is clear that the guidelines anticipated that an upward departure might apply in the case of an armed career criminal and that an upward departure might occur where a defendant's criminal history falls within

category VI. *See* U.S.S.G. § 4B1.4 cmt. background; U.S.S.G. § 4A1.3(a)(4)(B).

Here, the court emphasized McNeill's extensive criminal past, including convictions for 21 criminal offenses. The court also pointed out that McNeill had multiple unscored offenses and that McNeill's crimes were becoming increasingly more violent. Furthermore, the court considered that while incarcerated and on parole, McNeill continued to engage in inappropriate and illegal conduct, including the possession of an illegal substance during his current state sentence. The court determined that the North Carolina criminal justice system had previously failed to stop McNeill and that an upward departure was necessary to deter McNeill from future offenses. Accordingly, the court's decision to depart was not procedurally or substantively unreasonable.

In addition, the extent of the departure was reasonable. A court that elects to upwardly depart under section 4A1.3 must move horizontally across successive criminal history categories up to category VI, and, if category VI is inadequate, the court must then vertically traverse to successively higher offense levels until it finds a guideline range appropriate to the case. *See* U.S.S.G. § 4A1.3(a)(4); *United States v. Dalton*, 477 F.3d 195, 200 (4th Cir. 2007). The district court considered offense levels 32 and 33 and found that they did not adequately reflect the seriousness of McNeill's criminal history or what the court viewed as the near certain likelihood that McNeill will commit other crimes, including violent crimes. Accordingly, the court found offense level 34 yielded the guideline range most appropriate in this case. Under these circumstances, we do not find the court abused its discretion in departing upward.

IV.

Finally, McNeill contends the district court erred by failing to explain its rejection of the mitigating factors from

McNeill's childhood and adolescence in the court's sentencing determination.

To be sure, a "'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority'" by articulating how the sentencing factors apply to the case before it. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Rita*, 551 U.S. at 356). However, an appellate court "'should [give] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justif[y] the sentence.'" *Evans*, 526 F.3d at 162 (quoting *Gall*, 552 U.S. at 59-60).

Here, the court thoroughly considered whether a sentence within the advisory guideline range of 262 to 327 months' imprisonment would serve the factors set forth in § 3553(a). The court recognized that McNeill's latest offenses were very serious. McNeill was in illegal possession of a firearm in connection with his possession of crack cocaine when he fled from police officers. Additionally, the court took into account McNeill's history and characteristics. The court considered McNeill's young age in comparison to his extensive and violent criminal record. It noted that McNeill's work history was almost nonexistent as he spent much of his adult life incarcerated. Also, the court acknowledged McNeill's lack of positive role models or familial network, and his family members' criminal histories. The district court also stated that it had considered all of the arguments of defense counsel, the defendant's own statement, the presentence report, and all of the evidence on the record. Finally, the court concluded that a substantial period of incarceration was required to deter McNeill from committing violent and other felonies and provide public protection from McNeill, but that it would also provide time for McNeill to receive substance abuse treatment, learn vocational skills, and receive mental health treatment.

The district court thoughtfully and thoroughly applied the prescribed sentencing factors to the facts of the case and "adequately explain[ed] the chosen sentence." *Gall*, 552 U.S. at 50. Therefore, we conclude the chosen sentence was reasonable.

V.

Accordingly, for the foregoing reasons, we hereby affirm McNeill's sentence.

*AFFIRMED*