(Slip Opinion) OCTOBER TERM, 2010 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MCNEILL *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 10–5258. Argued April 25, 2011—Decided June 6, 2011

Under the Armed Career Criminal Act (ACCA), a felon unlawfully in possession of a firearm, 18 U. S. C. §922(g)(1), is subject to a 15-year minimum prison sentence if he has three prior convictions for a "violent felony" or "serious drug offense." As relevant here, a "serious drug offense" is defined as "an offense under State law . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law," §924(e)(2)(A)(ii). In sentencing petitioner McNeill for violating §922(g), the District Court determined that he qualified for ACCA's sentencing enhancement based in part on six prior North Carolina drug trafficking convictions. When McNeill committed those crimes, each carried a 10-year maximum sentence, which McNeill in fact received. However, because the State later reduced the maximum sentence for those offenses to fewer than 10 years, McNeill argued that none of his six prior convictions were for "serious drug offenses" within the meaning of §924(e)(2)(A)(ii). The District Court rejected McNeill's request that it look to current state law and instead relied on the 10-year maximum sentence that applied at the time he committed his state offenses. The Fourth Circuit affirmed.

*Held*:

   1. A federal sentencing court must determine whether "an offense under State law" is a "serious drug offense" by consulting the "maximum term of imprisonment" applicable to a defendant's prior state drug offense at the time of the defendant's conviction for that offense. §924(e)(2)(A)(ii). Pp. 3–7.

   (a) ACCA's plain text requires this result by mandating that the court determine whether a "previous conviction" was for a serious drug offense. The only way to answer this backward-looking question is to consult the law that applied at the time of that conviction.

ACCA's use of the present tense in defining a "serious drug offense" as, *inter alia,* "an offense . . . for which a maximum [10-year] term . . . is prescribed by law" does not suggest otherwise. McNeill's argument that this language looks to the state law in effect at the time of the federal sentencing ignores ACCA's focus on convictions that have already occurred. Pp. 3–4.

(b) The statute's broader context, specifically the adjacent definition of "violent felony," confirms this interpretation. Although Congress used the present tense in defining "violent felony," see §924(e)(2)(B), this Court has repeatedly turned to the version of state law that the defendant was actually convicted of violating in determining whether he was convicted of such a felony, see, *e.g., Taylor* v. *United States*, 495 U. S. 575, 602. The Court sees no reason to interpret "serious drug offenses" any differently. Cf. *Nijhawan* v. *Holder*, 557 U. S. ___, ___. Pp. 5–6.

(c) This natural reading of ACCA also avoids the absurd results that would follow from consulting current state law to define a previous offense. Pp. 6–7.

2. The District Court properly applied ACCA's sentencing enhancement to McNeill because all six of his prior drug convictions were for "serious drug offenses." Pp. 7–8.

598 F. 3d 161, affirmed.

THOMAS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–5258

CLIFTON TERELLE MCNEILL, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[June 6, 2011]

JUSTICE THOMAS delivered the opinion of the Court.

Under the Armed Career Criminal Act (ACCA), a prior state drug-trafficking conviction is for a "serious drug offense" if "a maximum term of imprisonment of ten years or more is prescribed by law" for the offense. 18 U. S. C. §924(e)(2)(A)(ii). The question in this case concerns how a federal court should determine the maximum sentence for a prior state drug offense for ACCA purposes. We hold that the "maximum term of imprisonment" for a defendant's prior state drug offense is the maximum sentence applicable to his offense when he was convicted of it.

I

After an extended chase, police officers in Fayetteville, North Carolina apprehended petitioner Clifton Terelle McNeill. McNeill was caught with 3.1 grams of crack cocaine packaged for distribution and a .38-caliber revolver. In August 2008, he pleaded guilty to unlawful possession of a firearm by a felon, 18 U. S. C. §922(g)(1), and possession with intent to distribute cocaine base, 21 U. S. C. §841(a)(1).

At sentencing, the District Court determined that

McNeill qualified for ACCA's sentencing enhancement. Under ACCA, a person who violates 18 U. S. C. §922(g) and "has three previous convictions . . . for a violent felony or a serious drug offense" is subject to a 15-year minimum prison sentence. §924(e)(1). McNeill conceded that two of his prior convictions—assault with a deadly weapon and robbery—were for "violent felonies."

McNeill argued, however, that none of his six state drug trafficking convictions were for "serious drug offenses" because those crimes no longer carried a "maximum term of imprisonment of ten years or more." §924(e)(2)(A)(ii). When McNeill committed those crimes between 1991 and 1994, each carried a 10-year maximum sentence, and McNeill in fact received 10-year sentences. See N. C. Gen. Stat. §§14–1.1(a)(8), 90–95(a)(1) and (b)(1) (Michie 1993) (sale of cocaine and possession with intent to sell cocaine). But as of October 1, 1994, North Carolina reduced the maximum sentence for selling cocaine to 38 months and the maximum sentence for possessing cocaine with intent to sell to 30 months. See N. C. Gen. Stat. Ann. §§15A–1340.17(c) and (d), 90–95(a)(1) and (b)(1) (Lexis 2009).

The District Court rejected McNeill's request that it look to current state law and instead relied on the 10-year maximum sentence that applied to McNeill's drug offenses at the time he committed them. No. 5:08–CR–2–D–1 (EDNC, Jan. 26, 2009), App. 118. Finding that McNeill therefore had three prior convictions for violent felonies or serious drug offenses, the court applied ACCA's sentencing enhancement. The court then departed upward from the advisory Sentencing Guidelines range and sentenced McNeill to 300 months in prison in light of his "long and unrelenting history of serious criminal conduct" and "near certain likelihood of recidivism." *Id.*, at 119, 121.

The Court of Appeals for the Fourth Circuit affirmed. Although the court consulted the maximum sentence under *current* state law, it reached the same conclusion as

the District Court because North Carolina's revised sentencing scheme does not apply to crimes committed before October 1, 1994. 598 F. 3d 161, 165 (2010) (agreeing with *United States* v. *Hinojosa*, 349 F. 3d 200 (CA5 2003), and disagreeing with *United States* v. *Darden*, 539 F. 3d 116 (CA2 2008)). Thus, even if McNeill were convicted today for his 1991, 1992, and September 1994 drug offenses, he would still be subject to the old 10-year statutory maximum. 598 F. 3d, at 165 (citing N. C. Gen. Stat. §15A–1340.10 and *State* v. *Branch*, 134 N. C. App. 637, 639–640, 518 S. E. 2d 213, 215 (1999)). We granted certiorari, 562 U. S. ___ (2011), and now affirm, albeit for a different reason.

## II

### A

As in all statutory construction cases, we begin with "the language itself [and] the specific context in which that language is used." *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341 (1997). ACCA's sentencing enhancement applies to individuals who have "three previous convictions . . . for a violent felony or a serious drug offense." §924(e)(1). As relevant here, the statute defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law." §924(e)(2)(A)(ii).

The plain text of ACCA requires a federal sentencing court to consult the maximum sentence applicable to a defendant's previous drug offense at the time of his conviction for that offense. The statute requires the court to determine whether a "previous conviction" was for a serious drug offense. The only way to answer this backward-looking question is to consult the law that applied at the time of that conviction. We did precisely that in *United*

*States* v. *Rodriquez*, 553 U. S. 377 (2008), where we addressed whether the "maximum term of imprisonment" includes recidivism enhancements. In assessing the "maximum term of imprisonment" for Rodriguez's state drug offenses, we consulted the version of state law "that [he] was convicted of violating," that is, the 1994 statutes and penalties that applied to his offenses at the time of his state convictions. *Id.*, at 380–381.

Use of the present tense in the definition of "serious drug offense" does not suggest otherwise. McNeill argues that the present-tense verb in the phrase "is prescribed by law" requires federal courts to determine the maximum sentence for a potential predicate offense by looking to the state law in effect at the time of the federal sentencing, as if the state offense were committed on the day of federal sentencing. That argument overlooks the fact that ACCA is concerned with convictions that have already occurred. Whether the prior conviction was for an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" can only be answered by reference to the law under which the defendant was convicted. Likewise, the maximum sentence that "is prescribed by law" for that offense must also be determined according to the law applicable at that time.

McNeill's interpretation contorts the plain meaning of the statute. Although North Carolina courts actually sentenced him to 10 years in prison for his drug offenses, McNeill now contends that the "maximum term of imprisonment" for those offenses is 30 or 38 months. We find it "hard to accept the proposition that a defendant may lawfully [have] be[en] sentenced to a term of imprisonment that exceeds the 'maximum term of imprisonment . . . prescribed by law.'" *Id.*, at 383.

## B

The "broader context of the statute as a whole," specifically the adjacent definition of "violent felony," confirms this interpretation. *Robinson, supra,* at 341. ACCA defines "violent felony" in part as a crime that "*has* as an element the use, attempted use, or threatened use of physical force against the person of another" or "*is* burglary, arson, or extortion, *involves* the use of explosives, or otherwise *involves* conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B) (emphasis added).

Despite Congress' use of present tense in that definition, when determining whether a defendant was convicted of a "violent felony," we have turned to the version of state law that the defendant was actually convicted of violating. In *Taylor* v. *United States*, 495 U. S. 575 (1990), the Court held that whether Taylor's 1963 and 1971 convictions were for a crime that *"is* burglary" depended on the "former Missouri statutes defining second-degree burglary" that "were the bases for Taylor's prior convictions." *Id.*, at 602; see *id.*, at 578, n. 1 (noting a subsequent change in state law, but relying on the burglary statutes in force "[i]n those years" in which Taylor was convicted). Similarly, in *James* v. *United States*, 550 U. S. 192 (2007), this Court looked to the versions of Florida's burglary and criminal attempt statutes that were in effect "at the time of James' [1993 state] conviction." *Id.*, at 197; see *ibid.* (quoting the 1993 versions of the Florida statutes). The present-tense verbs in the definition of "violent felony" did not persuade us to look anywhere other than the law under which the defendants were actually convicted to determine the elements of their offenses.

Having repeatedly looked to the historical statute of conviction in the context of violent felonies, we see no reason to interpret "serious drug offenses" in the adjacent section of the same statute any differently. In both defini-

tions, Congress used the present tense to refer to past convictions.  Cf. *Nijhawan* v. *Holder*, 557 U. S. ___, ___ (2009) (slip op., at 8) ("Where, as here, Congress uses similar statutory language . . . in two adjoining provisions, it normally intends similar interpretations").

C

This natural reading of ACCA also avoids the absurd results that would follow from consulting current state law to define a previous offense.  See *United States* v. *Wilson*, 503 U. S. 329, 334 (1992) ("[A]bsurd results are to be avoided").

For example, McNeill concedes that under his approach, a prior conviction could "disappear" entirely for ACCA purposes if a State reformulated the offense between the defendant's state conviction and federal sentencing.  Tr. of Oral Arg. 12–13.  The Sixth Circuit confronted a similar scenario in *Mallett* v. *United States*, 334 F. 3d 491 (2003), where Ohio had substantially changed how drug quantities were measured since Mallett's state drug conviction. *Id.*, at 502 (addressing this issue in the context of the career offender provision of the Sentencing Guidelines). The Sixth Circuit could not "determine how Mallett would now be sentenced under Ohio's revised drug laws" because the offense for which he had been convicted "no longer exist[ed] and no conversion between the former and amended statutes [wa]s facially apparent."  *Ibid.*  The court therefore was compelled to look to state law "as of the time of the state-court conviction" to determine the maximum possible sentence for Mallet's prior offense.  *Id.*, at 503.

It cannot be correct that subsequent changes in state law can erase an earlier conviction for ACCA purposes.  A defendant's history of criminal activity—and the culpability and dangerousness that such history demonstrates— does not cease to exist when a State reformulates its

criminal statutes in a way that prevents precise translation of the old conviction into the new statutes. Congress based ACCA's sentencing enhancement on prior convictions and could not have expected courts to treat those convictions as if they had simply disappeared. To the contrary, Congress has expressly directed that a prior violent felony conviction remains a "conviction" unless it has been "expunged, or set aside or [the] person has been pardoned or has had civil rights restored." 18 U. S. C. §921(a)(20); see also *Custis* v. *United States*, 511 U. S. 485, 491 (1994) (explaining that §921(a)(20) "creates a clear negative implication that courts *may* count a conviction that has *not* been set aside").

In addition, McNeill's interpretation would make ACCA's applicability depend on the timing of the federal sentencing proceeding. McNeill cannot explain why two defendants who violated §922(g) on the same day and who had identical criminal histories—down to the dates on which they committed and were sentenced for their prior offenses—should receive dramatically different federal sentences solely because one's §922(g) sentencing happened to occur after the state legislature amended the punishment for one of the shared prior offenses. In contrast, the interpretation we adopt permits a defendant to know even before he violates §922(g) whether ACCA would apply.

III

Applying our holding to this case, we conclude that the District Court properly applied ACCA's sentencing enhancement to McNeill. In light of his two admitted violent felony convictions, McNeill needed only one conviction for a "serious drug offense" to trigger ACCA, but we note that all six of his prior drug convictions qualify.

In November 1992, McNeill pleaded guilty and was sentenced in a North Carolina court for five offenses:

selling cocaine on four separate occasions in October 1991 and possessing cocaine with intent to sell on one occasion in February 1992. At the time of McNeill's November 1992 conviction and sentencing, North Carolina law dictated that the maximum sentence for selling cocaine in 1991 and the maximum sentence for possessing cocaine with intent to sell in 1992 was 10 years in prison. See N. C. Gen. Stat. §§14–1.1(a)(8), 90–95(a)(1) and (b)(1) (Michie 1991). McNeill's 1992 convictions were therefore for "serious drug offenses" within the meaning of ACCA.

McNeill's sixth drug offense was possessing cocaine with intent to sell in September 1994. He pleaded guilty and was sentenced in a North Carolina court in April 1995. By April 1995, North Carolina had changed the sentence applicable to that type of drug offense but still provided that the maximum sentence for possessing cocaine with intent to sell in September 1994 was 10 years in prison. See 1993 N. C. Sess. Laws, ch. 538, §2 (repealing N. C. Gen Stat. §14–1.1); 1993 N. C. Sess. Laws, ch. 538, §56 (as modified by Extra Session 1994 N. C. Sess. Laws, ch. 24, §14(b)) ("This act becomes effective October 1, 1994, and applies only to offenses occurring on or after that date. Prosecutions for, or sentences based on, offenses occurring before the effective date of this act [are controlled by] the statutes that would be applicable to those prosecutions or sentences but for the provisions of this act"). Therefore, McNeill's 1995 conviction was also for a "serious drug offense."

\* \* \*

We conclude that a federal sentencing court must determine whether "an offense under State law" is a "serious drug offense" by consulting the "maximum term of imprisonment" applicable to a defendant's previous drug offense at the time of the defendant's state conviction for that

offense.* §924(e)(2)(A)(ii). The judgment of the United States Court of Appeals for the Fourth Circuit is affirmed.

*It is so ordered.*

——————

 *As the Government notes, this case does not concern a situation in which a State subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted and sentenced for that offense. Brief for United States 18, n. 5; cf. 18 U. S. C. §3582(c)(2). We do not address whether or under what circumstances a federal court could consider the effect of that state action.