In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 13-2622

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROOSEVELT L. SPENCER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 13-cr-33-bbc — **Barbara B. Crabb**, *Judge.*

———————————

ARGUED JANUARY 6, 2014 — DECIDED JANUARY 10, 2014

———————————

Before EASTERBROOK, WILLIAMS, and TINDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* A person who accumulates three convictions for violent felonies or serious drug offenses, then commits a federal firearms offense, is an armed career criminal and must be sentenced to at least 15 years in prison. 18 U.S.C. §924(e). Roosevelt Spencer pleaded guilty to possessing a firearm, despite his prior felony convictions, in violation of 18 U.S.C. §922(g). The district court concluded

that he is an armed career criminal and sentenced him to the minimum term. He concedes that two of his convictions qualify under §924(e) but denies that the third, for a methamphetamine crime, meets the statutory standard for a "serious drug offense", which for state convictions means one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law". Spencer maintains that Wis. Stat. §961.41(1)(e)(1), which prohibits the manufacture or delivery of methamphetamine, does not carry "a maximum term of imprisonment of ten years or more".

Spencer's Wisconsin conviction is for a Class F felony. A separate statute, Wis. Stat. §939.50(3)(f), provides that the maximum punishment for a Class F felony is 12½ years' imprisonment. But for felonies committed in 2000 and later (as Spencer's was) the judge must impose a "bifurcated sentence" that "consists of a term of confinement in prison followed by a term of extended supervision". Wis. Stat. §973.01(2). For a Class F felony, the longest permissible "term of confinement in prison" is 7½ years. Wis. Stat. §973.01(2)(b)(6m). "Extended supervision" must be at least 25% of the "term of confinement in prison", see §973.01(2)(d), and may be as long as the rest of the term authorized by §939.50(3). The consequences of "extended supervision" are laid out in Wis. Stat. §302.113. The state's Department of Corrections can extend an inmate's time in prison by as much as 10 days for the first violation of any prison rule, 20 days for the second, 40 days for the third, and 50% of any time spent in segregation; all of these extensions together cannot exceed the term of extended supervision. A convict

released from custody, but still on extended supervision, may be returned to prison for the balance of the term if the convict violates any condition of supervision imposed by the judge, either initially or on petition by the Department.

The United States contends, and the district judge held, that the "maximum term of imprisonment" for the purpose of §924(e) is the one provided by §939.50(e). Bifurcation between initial confinement and extended supervision under §973.01 does not matter, the judge held, because §302.113 and §939.50(e) together show that a Class F felon in Wisconsin can spend as much as 12½ years behind bars without the need for a further criminal conviction—indeed, without the need for a state judge to act, if the inmate's behavior is so poor that the Department of Corrections extends the inmate's confinement to the limit of the extended release included in the sentence. This meant that Spencer faced a maximum prison stay of 12½ years for his methamphetamine crime, giving him a total of three violent felonies or serious drug offenses.

The principal difficulty with this understanding is that it uses "maximum term of imprisonment" in a non-standard way. When lawyers refer to a "maximum term" they usually mean the time the judge could impose, on the worst offender, on the date of sentencing, rather than the amount of time a given person is likely to serve. *United States v. Rodriquez*, 553 U.S. 377 (2008), shows this in holding that the "maximum term" for the purpose of §924(e) includes recidivist enhancements even if state or federal guidelines will lead the judge to select a term below the highest possible one. *McNeill v. United States*, 131 S. Ct. 2218 (2011), adds that the "maximum term" means the maximum on the date of sen-

tencing, without regard to what happens later—parole, pardon, or a statutory change (in *McNeill*, a reduction in the cap for future offenders, something the Justices held does not matter when ascertaining the maximum a particular convict faced on the day he was sentenced).

Post-sentencing events that affect how long a person spends in prison do not change the "maximum term" as the legal system customarily uses that phrase. Consider federal practices before the Sentencing Reform Act of 1984. Most prisoners were eligible for parole after serving a third of their sentences; some prisoners could be released on parole almost immediately after entering prison. After serving two-thirds of a sentence, a person was entitled to release unless the Parole Board had a strong reason to keep him locked up. *United States v. Addonizio*, 442 U.S. 178 (1979), describes this system. But judges and lawyers understood the "maximum term" to be the longest confinement authorized by statute, not how long a given felon was likely to spend in prison before release. Good-time credits are treated the same way. Prisoners sentenced under federal law receive 15% off their time if they follow prison rules. See 18 U.S.C. §3624(b); *Barber v. Thomas*, 560 U.S. 474 (2010). The statutory maximum is unaffected by this possibility, however; it reflects the highest imposable sentence rather than how much will be served in light of events that occur after imprisonment begins.

The prosecutor wants us to view Wisconsin's bifurcated sentencing as a form of reverse good time. Instead of setting a maximum less rewards for good behavior, as federal law does, Wisconsin sets a minimum plus penalties for bad behavior. Good-time and bad-time systems come to the same thing by different routes, the prosecutor insists, and should

be treated the same way, so that the "maximum term of imprisonment" under either system is the longest time a convict may spend in custody without the need for a new conviction.

If that is so, however, then supervised release under federal law also increases the "maximum term." Every federal sentence imposed since the 1984 Act took effect in 1987 has been bifurcated in a way similar to Wisconsin's. The judge pronounces a term of incarceration, to be followed by a term of supervised release under 18 U.S.C. §3583. Anyone who violates the conditions attached to supervised release may be returned to prison for the full length of the supervised term. Commission of another crime is unnecessary. So if a felon refuses to submit to drug tests required by the conditions of release, or leaves the state without permission, or balks at paying restitution, these and other acts may put him back in prison.

Treating a prospect of longer imprisonment as augmenting the "maximum term" for the purpose of §924(e) would increase the number of persons who qualify as armed career criminals. According to 18 U.S.C. §3559(a)(4), a crime with a maximum penalty of five or more years, but less than 10 years, is a Class D felony. According to §3583(b)(2), a person convicted of a Class D felony may have three years' supervised release tacked onto the sentence. Thus a crime with a statutory maximum of seven years would have a "maximum term" of 10 years, adding together imprisonment and supervised release in the same way the prosecutor proposes to add imprisonment plus extended supervision under Wisconsin law. And that's not all. For crimes involving terrorism, crimes in which the victim is a minor, and a variety of

other offenses, the maximum term of supervised release is life. 18 U.S.C. §3583(j), (k). A long list of crimes would be added to those qualifying under §924(e) for stiff recidivist sentences. This strikes us as an unlikely, backhanded way to bring additional predicate crimes within §924(e). It is more sensible to read "maximum term" as lawyers and judges ordinarily do—a reference to the maximum sentence the judge can pronounce on the worst offender, with neither additions nor subtractions reflecting probabilities about what may happen in the future (pardon, parole, commutation, good time, bad time, statutory amendments, retroactive changes to sentencing guidelines, and so on).

Counsel for the United States contended at oral argument that supervised release under federal law differs from extended supervision under Wisconsin law because only a judge can revoke a federal prisoner's supervised release, while Wisconsin's Department of Corrections can require a state prisoner to serve in prison some or all of a sentence's term of extended supervision. That's true enough, though the separation between administrative and judicial action is not complete: decisions adding prison time in Wisconsin are reviewable in the state courts by common-law writ of certiorari, and in the federal courts by petitions for writs of habeas corpus under 28 U.S.C. §2254. No matter. The allocation of tasks between executive and judicial personnel is unrelated to the meaning of "maximum term of imprisonment" in §924(e). If Congress were to amend §3583 so that supervised release could be revoked by the court's Probation and Pretrial Services System—as parole used to be revocable by the Parole Commission—that change would not suddenly add the longest possible duration of supervised release to the "maximum term" under §924(e).

Classifying offenses according to the usual legal under-standing of "maximum term" allows federal judges to de-termine their sentences without a need to dig into the back-ground and administration of the many different state sys-tems. Wisconsin appears to be unique in implementing a "bad-time" split sentence that looks like a mirror image of the federal good-time-plus-supervised-release system, but other states have their own variations.

The prosecutor has invited us to consider the nature of Wisconsin's truth-in-sentencing reforms and to conclude that the introduction of the bifurcated sentence under Wis. Stat. §973.01(2) didn't "really" change the maximum term, despite what §973.01(2)(b)(6m) says. The maximum through 1999 was 12½ years, and the prosecutor maintains that it is still 12½ years; the substitution of "extended supervision" for five years of the old statutory cap is just the means that Wisconsin used to end parole and adopt a system of deter-minate sentences parallel to those under the federal Sentenc-ing Reform Act of 1984. That may be an accurate description of some (even many) state legislators' thinking, but if federal recidivist statutes such as §924(e) are to be administrable, we must go on what the state statute books say, rather than on *why* they say what they do or how they got that way com-pared with predecessor statutes.[†] Avoiding the need for de-

---

[†] Wisconsin's history provides an illustration. The text of this opin-ion greatly simplifies the developments, at the expense of some impreci-sion. A more complete description would cover the initial changes enact-ed in June 1998 and effective at the beginning of 2000, and a second set of changes enacted in July 2002 and effective February 1, 2003. This second set created the Class F felony; until then §939.50(3)(f) and §973.01(2)(b)(6m) did not exist. The 1998 legislation changed the length of imprisonment plus extended release at the same time as it created the

tours is one reason why federal recidivist sentences depend on the terms of the statute of conviction, rather than on what the defendants did in fact. See, e.g., *Descamps v. United States*, 133 S. Ct. 2276 (2013).

The normal legal understanding of "maximum term" is the highest sentence a judge can mete out to anyone for a particular crime. To the extent that there is ambiguity in the text and structure of §924(e), the Rule of Lenity calls for us to read the federal statute favorably to the accused. *Skilling v. United States*, 130 S. Ct. 2896, 2932 (2010); *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 409 (2003). The highest custodial sentence a judge in Wisconsin was authorized to impose on Spencer for his Class F felony was 7½ years. This is the "maximum term" as §924(e) uses that phrase. The upshot is that Spencer has only two qualifying predicate convictions and may not be sentenced as an armed career criminal.

The judgment is vacated, and the case is remanded with instructions to resentence Spencer without the enhancement under §924(e).

---

bifurcated sentence (at one point the total was only 5 years), and the current total of 12½ years comes from the 2002 statute. A summary of these and other changes may be found in Thomas J. Hammer, *The Long and Arduous Journey to Truth-in-Sentencing in Wisconsin*, 15 Federal Sentencing Reporter 15 (2002). As we say in the text, our reading of §924(e) enables us to resolve the appeal without getting into these complexities.