**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROGER BRYANT HARBIN,

    Defendant - Appellant.

No. 21-8038

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 0:20-CR-00202-SWS-1)**
_____

Josh Lee, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender and Shira Kieval, Assistant Federal Public Defender, on the briefs), Office of the Federal Public Defender, Districts of Colorado and Wyoming, Denver, Colorado, for Defendant – Appellant.

Timothy J. Forwood, Assistant United States Attorney (L. Robert Murray, United States Attorney, with him on the brief), Office of the United States Attorney, District of Wyoming, Cheyenne, Wyoming, for Plaintiff – Appellee.
_____

Before **BACHARACH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**MURPHY**, Circuit Judge.
_____

## I.  Introduction

Roger Harbin pled guilty to various drug and firearm offenses and was sentenced to a total of 280 months of imprisonment.  On appeal, Harbin challenges his sentence, contending the district court plainly erred by enhancing his sentence under U.S.S.G. § 4B1.1.  This court exercises jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  Because any error in applying the § 4B1.1 enhancement was not plain, we **affirm** the district court's sentencing decision.

## II.  Background

In October 2020, deputies from the Campbell County Sheriff's Office initiated a traffic stop after observing Harbin violating the speed limit.  Instead of stopping his vehicle, Harbin led the deputies on a 22-mile high-speed chase, during which he threw a black bag out of his vehicle.  The chase ended after a deputy deployed spike strips to stop the vehicle.  A deputy searched Harbin and found a small baggie of heroin and a vape cartridge containing suspected THC liquid.  Deputies also retrieved and searched the black bag Harbin had thrown from his vehicle during the pursuit.  This bag was found to contain a loaded handgun, an extra magazine, and two knives.  A subsequent search of Harbin's vehicle revealed approximately 20 grams of methamphetamine; multiple drug ledgers; three cellular phones; and $14,037 in cash, bundled in $1000 increments.

In March 2021, Harbin pled guilty to (1) possession with intent to distribute methamphetamine; (2) carrying a firearm during and in relation to a drug trafficking offense, and (3) being a felon in possession of a firearm.  The United States Probation Office then prepared a Presentence Investigation Report ("PSR").  The PSR

2

recommended that Harbin receive a career-offender sentencing enhancement under U.S.S.G. § 4B1.1, which provides that "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The PSR concluded Harbin satisfied this definition because he was at least 18 when he committed the instant federal crimes, those crimes included at least one controlled-substance offense, and he had two prior felony convictions for controlled-substance offenses—a 2011 Georgia conviction for conspiracy to distribute methamphetamine, and a 2014 Wyoming conviction for possession of marijuana with intent to deliver. Based on this enhancement, the PSR calculated an advisory guideline range of 292 to 365 months for Counts 1 and 3, as well as a mandatory minimum consecutive sentence of 60 months for Count 2.

Harbin did not object to the PSR, but requested a sentence below the advisory guideline range. The district court ultimately decided to vary downward from the advisory range based on (1) a policy disagreement with an enhancement for unlawful importation, and (2) the consecutive nature of the 60-month minimum sentence on Count 2. The court accordingly sentenced Harbin to a below-guidelines sentence of 220 months on Count 1 and a concurrent sentence of 120 months (the statutory maximum sentence) on Count 3, followed by a consecutive 60-month sentence on Count 2.

On appeal, Harbin challenges only the district court's application of the § 4B1.1 enhancement, arguing this enhancement does not apply because his Wyoming marijuana conviction cannot be defined as a controlled-substance offense due to intervening changes in the state's definition of marijuana.

### III.  Analysis

Because Harbin did not raise this objection to his sentence below, it is subject to review only for plain error.  *United States v. Archuleta*, 865 F.3d 1280, 1290 (10th Cir. 2017).  "We will find plain error only when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (quotations omitted).  To show that an error is plain, Harbin "must demonstrate either that this court or the Supreme Court has resolved these matters in his favor, or that the language of the relevant statutes [or guidelines] is clearly and obviously limited to the interpretation [he] advances."  *United States v. Fagatele*, 944 F.3d 1230, 1239 (10th Cir. 2019) (citation and quotation omitted).  "In the absence of Supreme Court or circuit precedent directly addressing a particular issue, a circuit split on that issue weighs against a finding of plain error."  *United States v. Salas*, 889 F.3d 681, 687 (10th Cir. 2018) (quotation omitted).

As pertinent here, the sentencing guidelines define a controlled-substance offense as "an offense under . . . state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to

4

manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).[1]  Harbin

argues that because this definition uses the present tense verb "prohibits" and because

sentencing courts must apply the version of the guidelines in effect at the time of the

federal sentencing, the term "controlled substance" must be defined by reference to

current law, meaning the state's controlled-substance law at the time of the federal

sentencing.  Accordingly, he asserts that the sentencing court must compare the elements

of the statute of conviction with the state's current controlled-substances law.  If the

statute of conviction had a broader scope than the current state law, he argues, then a

conviction under the former version of the controlled-substances statute does not qualify

as a controlled-substance conviction for purposes of §§ 4B1.1 and 4B1.2(b).

Wyoming's definition of marijuana included hemp at the time of Harbin's 2014

conviction for possession of marijuana with intent to deliver.  At the time of his federal

sentencing, however, Wyoming defined marijuana more narrowly to exclude hemp.

Accordingly, because he could have been convicted of possessing a substance that is no

longer criminalized by Wyoming, Harbin contends his prior marijuana conviction no

longer qualifies as a prior controlled-substance conviction under §§ 4B1.1 and 4B1.2(b).

For support, he cites to cases from other circuits and to a recent decision from this circuit

involving an enhancement under the Armed Career Criminal Act ("ACCA").  For the

---

[1] The PSR reveals that Harbin's 2014 Wyoming conviction was pursuant to Wyo. Stat. Ann. § 35-7-1031(a)(ii), which renders it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."  Other than the temporal argument set out below, Harbin does not contend that his Wyoming conviction for possession of marijuana with intent to deliver does not fall within the definition of controlled-substance offense set out in § 4B1.2(b).

reasons discussed below, we conclude that none of these cases satisfy Harbin's burden of demonstrating a clear or obvious error in the district court's application of the § 4B1.1 enhancement in this case.

The circuits have split on the question of how to define controlled-substance offenses under §§ 4B1.1 and 4B1.2(b). *See Guerrant v. United States*, 142 S. Ct. 640 (2022) (Sotomayor, J., statement on denial of certiorari). Some circuits have held or assumed that the term "controlled substance" refers only to substances defined in the federal Controlled Substances Act ("CSA"), while several other circuits, including this circuit, have held that a state drug conviction may be considered a controlled-substance offense under the career-offender guideline even if the state criminalizes substances that are not listed in the CSA. *See id.* (collecting cases); *see also United States v. Jones*, 15 F.4th 1288, 1294 (10th Cir. 2021) ("[B]y not referencing the Controlled Substance Act definition in § 4B1.2(b), the Commission evidenced its intent that the enhancement extend to situations in which the state-law offense involved controlled substances not listed in the Controlled Substance Act.").[2]

When the question of timing has arisen in other circuits, the circuits that apply a federal definition to § 4B1.1 have held that the current federal definition controls, rather than the federal definition that was in place at the time of the state drug conviction. *See*

---

[2] Harbin argues that *Jones* was wrongly decided. As he acknowledges, however, "[t]his panel . . . may not overrule the decision of a previous panel." *United States v. Mitchell*, 518 F.3d 740, 752 n.14 (10th Cir. 2008). Accordingly, we do not further address this argument, nor do we address the other arguments Harbin raises only for preservation purposes.

*United States v. Bautista*, 989 F.3d 698, 704 (9th Cir. 2021); *United States v. Abdulaziz*, 998 F.3d 519, 524 (1st Cir. 2021).  Accordingly, these circuits compare the elements of the statute of conviction with the current version of the CSA and do not treat a prior conviction as a controlled-substance offense if the statute of conviction encompassed conduct that is not currently criminalized by the CSA.  *See Bautista*, 989 F.3d at 704; *Abdulaziz*, 998 F.3d at 524.  In circuits that do not define "controlled substance" by reference to the CSA, by contrast, every circuit to reach the timing question has held that "the proper point of reference for establishing the status of the prior offense as a controlled substance felony is the point at which the defendant's guilt was established." *United States v. Clark*, 46 F.4th 404, 412 (6th Cir. 2022); *see also United States v. Perez*, 46 F.4th 691, 703 (8th Cir. 2022) ("[T]his court has also held that whether a prior state conviction is a controlled substance offense for Guidelines purposes is based on the law at the time of conviction, without reference to current state law.").

In rejecting the position Harbin urges us to adopt in this case, the Sixth and Eighth Circuits both relied on the Supreme Court's decision in *McNeill v. United States*, 563 U.S. 816 (2011).  In *McNeill*, the defendant appealed his sentence, contending that none of his prior drug-trafficking convictions qualified as a "serious drug offense" under the ACCA because the state had amended the maximum penalty for those offenses after he was convicted. *Id.* at 818.  In rejecting this argument, the Supreme Court noted such an interpretation of the ACCA would mean that "a prior conviction could 'disappear' entirely for ACCA purposes if a State reformulated the offense between the defendant's

7

state conviction and federal sentencing." *Id.* at 822. The Court found such a result to be untenable, stating:

> It cannot be correct that subsequent changes in state law can erase an earlier conviction for ACCA purposes. A defendant's history of criminal activity—and the culpability and dangerousness that such history demonstrates—does not cease to exist when a State reformulates its criminal statutes in a way that prevents precise translation of the old conviction into the new statutes. Congress based ACCA's sentencing enhancement on prior convictions and could not have expected courts to treat those convictions as if they had simply disappeared. To the contrary, Congress has expressly directed that a prior violent felony conviction remains a "conviction" unless it has been "expunged, or set aside or [the] person has been pardoned or has had civil rights restored."

*Id.* at 823 (alteration in original) (quoting 18 U.S.C. § 921(a)(20)). The Court also rejected the defendant's argument that his interpretation of the ACCA was supported by the statute's use of the present tense. As the Court explained, the defendant argued that "the present-tense verb in the phrase 'is prescribed by law' requires federal courts to determine the maximum sentence for a potential predicate offense by looking to the state law in effect at the time of the federal sentencing, as if the state offense were committed on the day of federal sentencing." *Id.* at 820. The Court found this argument unpersuasive because it "overlook[ed] the fact that ACCA is concerned with convictions that have already occurred." *Id.* Ultimately, the "backward-looking" question "[w]hether the prior conviction was for an offense 'involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance' can only be answered by reference to the law under which the defendant was convicted," meaning "the law that applied at the time of that conviction." *Id.*

Before the Sixth Circuit issued its published decision in *Clark*, an earlier Sixth Circuit panel suggested in an unpublished, split decision that "controlled substance" must be defined by reference to current drug schedules, whether the appropriate frame of reference was state or federal law. *See United States v. Williams*, 850 F. App'x 393, 398 (6th Cir. 2021) (unpublished). The Sixth Circuit expressly rejected that conclusion in *Clark*, however, holding that the *Williams* "majority did not fully engage the Supreme Court's reasoning in *McNeill*." 46 F.4th at 414. "Under *McNeill*'s logic," *Clark* held, "courts must define the term [controlled substance] as it exists in the Guidelines at the time of federal sentencing by looking backward to what was considered a 'controlled substance' at the time the defendant received the prior conviction that triggers the enhancement." *Id.* at 411. In addition to concluding that this result was dictated by *McNeill*, *Clark* also reasoned that "[t]his approach tracks the purpose of recidivism enhancements" and avoids the absurdity of "consult[ing] current law to define a previous offense." *Id.* at 412.

In *Perez*, the Eighth Circuit considered two different sentencing enhancements with different controlling definitions. The Eighth Circuit first considered an enhancement imposed under the ACCA, which specifically defines "serious drug offense" by reference to the CSA. *Perez*, 46 F.4th at 698. The court "conclude[d] that the relevant federal definition for ACCA purposes is the definition in effect at the time of the federal offense." *Id.* at 699. The Eighth Circuit reasoned that this question was not controlled by *McNeill* because *McNeill* only held that subsequent changes to *state* law cannot erase a prior conviction for federal sentencing purposes, and "the reasoning in

9

*McNeill* regarding state law does not translate to this issue concerning the federal drug statute." *Id.* at 700. Accordingly, because the state statute of conviction included a substance not included within the current version of the CSA, the defendant's prior cocaine offenses did not qualify as serious drug offenses under the ACCA. *Id.* at 701. The Eighth Circuit reached a different conclusion, however, as to a career-offender enhancement imposed under § 4B1.1. *Id.* at 702-03. While "the ACCA imposes a higher mandatory minimum sentence for a federal firearms offense based on whether the defendant has previously committed a 'serious drug offense' as defined under the federal Controlled Substances Act, the Guidelines provide guidance for sentencing based on a defendant's criminal history, risk of recidivism, and other relevant characteristics, including whether any prior state law offenses were related to controlled or counterfeit substances under state law." *Id.* at 703 n.4. Because the Guidelines enhancement is not tied to a federal definition, state law determines whether a prior state offense qualifies as a controlled-substance offense, and the Eighth Circuit reasoned that *McNeill* requires state-law definitions to be determined "only in light of then-applicable state law." *Id.* The Eighth Circuit therefore concluded that the defendant's "uncontested prior cocaine convictions are controlled substance offenses under Iowa law for purposes of calculating his advisory Guidelines range, irrespective of later changes in the definition of 'cocaine' under Iowa state law or federal law." *Id.* at 703. Thus, despite concluding that the ACCA enhancement must be based on the version of the federal statute in effect at the time of the defendant's federal sentencing, the court rejected the notion that a § 4B1.1 enhancement must similarly be based on the current version of the state statute.

Harbin asks this court to hold that the definition of a controlled-substance offense under § 4B1.1 must be determined based on current law rather than the law in effect at the time of the conviction. He argues that this result is clearly and obviously correct based on the First Circuit's opinion in *Abdulaziz*, the Ninth Circuit's opinion in *Bautista*, the Sixth Circuit's unpublished decision in *Williams*, and this court's recent opinion in *United States v. Williams*, 48 F.4th 1125 (10th Cir. 2022). With the exception of the unpublished and now-disavowed Sixth Circuit decision, however, none of these cases involved a comparison between the statute of conviction and the current *state* statute. Rather, each of those cases applied an enhancement based on the current version of the federal statute.

The issue before this court in *Williams* "concern[ed] whether a prior conviction qualifies as an ACCA predicate." *Id.* at 1141. The ACCA specifically defines controlled substances by reference to the CSA, but in *Williams* the panel needed to determine whether the former or current version of the CSA applied. *Id.* Based on the language of the statute, the panel concluded that Congress did not intend the ACCA's federally based definition of controlled-substance offenses "to incorporate historical versions of the federal drug schedules." *Id.* The panel found *McNeill* inapplicable to this issue because the Supreme Court in *McNeill* "was discussing a subsequent change in the prior offense of conviction—and not the federal definition to which it is compared." *Id.* at 1142. Accordingly, the panel concluded, "*McNeill* has no bearing on what version of *federal law* serves as the point of comparison for the prior state offense, which is the question here." *Id.* at 1143.

11

Thus, *Williams* did not broadly hold that all definitions of controlled-substance offenses must be based on current law. Rather, *Williams* held only that the text of the ACCA requires reference to current federal law to determine whether an offense qualifies as an ACCA predicate.[3] Moreover, *Williams*' reasons for distinguishing *McNeill* fall flat in the context of a state-law-based § 4B1.1 enhancement. *Williams* distinguished *McNeill*

---

[3] Harbin suggests that this panel should find *Williams* to be controlling, despite its different context, based on a document filed by the government in a separate appeal that involves the same § 4B1.1 issue under consideration here, *United States v. Jackson*, No. 21-8054. In that appeal, the government "concede[d] that the *Williams* decision appears to be applicable to determining whether a prior conviction qualifies as a 'controlled substance' under the Guidelines," while arguing that any error was not clear or obvious under the law in effect at the time of sentencing. *But see Henderson v. United States*, 568 U.S. 266, 276 (2013) (holding that the plainness of an error is measured against the law "in effect at the time [the appellate court] renders its decision"). In this appeal, on the other hand, the government argues that *Williams* does not resolve this issue and that, in the absence of Supreme Court or Tenth Circuit precedent directly addressing this particular issue, the circuit split reflected by *Abdulaziz*, *Bautista*, *Clark*, and *Perez* weighs strongly against a finding of plain error. *See Salas*, 889 F.3d at 687.

The government's concession in *Jackson* does not affect our resolution of this appeal. The question whether *Williams*' reasoning extends to the § 4B1.1 context is a legal question, and this court is not required to "accept what in effect was a stipulation on a question of law." *U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993). Moreover, the government's concession in one appeal is not binding in other appeals even if the concession has been accepted and applied in a published decision. *See, e.g.*, *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1234 (10th Cir. 2009) ("This court did not actually decide that issue; it merely accepted the government's concession that California's statute was broader than the generic definition. . . . That decision is not, therefore, binding precedent on this issue."). Given that we would not be bound by the government's concession in *Jackson* even if the *Jackson* panel had already issued a published decision based on that concession, we see no reason why the concession would change our evaluation of the legal issues before us in this appeal. Accordingly, although we **grant** Harbin's motion for this court to take judicial notice of the government's filing in *Jackson*, it does not impact our resolution of this appeal.

on the basis that *McNeill* addresses only changes in state law and is inapplicable when the pertinent change is to federal law. But *McNeill* cannot be distinguished on that basis in this case, where "the focus is solely on [the] prior state law offenses," *Perez*, 46 F.4th at 703 n.4. As *Perez* illustrates, a court can conclude that *McNeill* precludes reference to current state law in applying the § 4B1.1 enhancement even if the same court refers to current federal law in applying the ACCA enhancement. Thus, *Williams* does not make it clear or obvious that the district court erred in applying the § 4B1.1 enhancement based on the state statute as it existed at the time of Harbin's conviction.

The out-of-circuit authorities relied on by Harbin likewise do not establish that any sentencing error in this case was plain. The Sixth Circuit's unpublished *Williams* decision cannot help Harbin to establish plain error in light of the Sixth Circuit's subsequent rejection of that decision in its published precedent. As for the Ninth Circuit's decision in *Bautista* and the First Circuit's decision in *Abdulaziz*, those cases did not involve the same question that is before us in this appeal. Although the courts in those cases were considering a § 4B1.1 enhancement rather than an ACCA enhancement, both circuits either held or assume that the § 4B1.1 enhancement must be defined by reference to federal law, and they held only that the pertinent federal definition must come from the current, rather than former, version of the CSA. Moreover, as this court did in *Williams*, those decisions distinguished *McNeill* at least in part on the basis that *McNeill* does not dictate which version of *federal* law the court must consider. *See Bautista*, 989 F.3d at 703 ("Unlike in *McNeill*, the state law in our case has not changed. Rather, federal law has changed. The question before us is whether the sentencing court

13

should determine the relevance of Bautista's prior state conviction under the federal sentencing law that exists at the time of sentencing or under federal sentencing law that no longer exists. *McNeill* nowhere implies that the court must ignore current federal law and turn to a superseded version of the United States Code."); *Abdulaziz*, 998 F.3d at 527 ("*McNeill* emphasized how strange it would be to treat a defendant as having been convicted of an offense the elements of and penalties for which would become known to him only upon his sentencing for his conviction of an entirely different offense that he had subsequently committed. But, there is nothing similarly strange about looking to *federal* law as it exists at the time of a defendant's federal sentencing to determine the criteria that a potentially applicable federal sentencing enhancement uses to determine whether the enhancement must be applied at that sentencing." (citation omitted) (emphasis added)). The only out-of-circuit opinions to address the specific issue before us in this appeal are *Perez* and *Clark*, both of which rejected the argument that a sentencing court should consult current state law to determine whether a prior state offense qualifies as a controlled-substance offense. The decisions of other circuits thus provide no support for Harbin's plain-error argument.[4]

---

[4] We conclude there is no circuit split on this issue because the only circuits to consider this specific issue have held that *McNeill* precludes reference to current state law to define a controlled-substance offense. As explained above, *Abdulaziz* and *Bautista* are distinguishable because they refer to current *federal* law to define controlled-substance offenses under § 4B1.1. To the extent these cases might be considered to create a circuit split on this issue, however, the existence of a circuit split itself weighs against any finding of plain error. *See Salas*, 889 F.3d at 687.

14

Finally, Harbin argues that the text of the guideline itself plainly requires reference to current state law because it uses the present-tense verb "prohibits." As discussed above, the Supreme Court rejected a similar present-tense argument in *McNeill*, concluding, despite the ACCA's use of the present tense, that the ACCA asked the "backward-looking" question "[w]hether the prior conviction was for an offense 'involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance.'" 563 U.S. at 820. The Court held that this backward-looking question could "only be answered by reference to the law under which the defendant was convicted," meaning "the law that applied at the time of that conviction," regardless of the statute's use of the present tense. *Id.* Harbin argues that *McNeill* is distinguishable because the Court in *McNeill* referred to state law only to determine the categorical elements of the offense, not to decide whether a specific substance qualified as a controlled substance. At a minimum, however, *McNeill*'s rejection of a similar argument weighs strongly against any conclusion that the guideline's use of the present tense plainly requires reference to current rather than former state law.

In sum, this circuit's opinion in *Williams* did not resolve the question whether a prior state drug conviction should be defined by reference to current rather than former state law, and the only published opinions to consider this specific issue have rejected the position Harbin asks this court to adopt. The Supreme Court has not directly addressed this issue and, if anything, *McNeill* seems to undermine Harbin's position. Moreover, in light of *McNeill*'s rejection of a present-tense argument similar to the textual argument Harbin raises in this case, we are not persuaded that the language of the guidelines "is

15

'clearly and obviously' limited to the interpretation [Harbin] advances," *Fagatele*, 944 F.3d at 1239.  Harbin therefore has not met his burden of demonstrating that any error in applying the § 4B1.1 enhancement was clear or obvious.  *See id.*; *see also Salas*, 889 F.3d at 687.  Because Harbin's appeal thus fails at the second prong of plain-error review, we do not address the other prongs.

## IV.  Conclusion

We **affirm** the district court's sentencing decision and **grant** Harbin's motion to take judicial notice.